## SIMON *v.* SOUTHERN RAILWAY COMPANY.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE
FIFTH CIRCUIT.

No. 34. Argued November 2, 3, 1914.—Decided January 25, 1915.

United States courts by virtue of their general equity powers have jurisdiction to enjoin the enforcement of a judgment obtained by fraud or without service.

In the absence of service of process, a person named as defendant can no more be regarded as a party than any other member of the community.

A judgment against a person on whom no process has been served is not erroneous and voidable, but, upon principles of natural justice, and also under the due process clause of the Fourteenth Amendment, is absolutely void.

Jurisdiction of the United States courts cannot be lessened or increased by state statutes regulating venue or establishing rules of procedure.

While § 720, Rev. Stat., prohibits United States courts from staying proceedings in a state court, it does not prevent them from depriving a party of the fruits of a fraudulent judgment, nor from enjoining a party from using that which he calls a judgment but which is, in

fact and in law, a mere nullity and absolutely void for lack of service of process. *Marshall* v. *Holmes*, 141 U. S. 589.

This rule obtains whether the case was one removed from the state court to, or originally commenced in, the Federal court.

The broader the ground of a decision, the more likelihood there is of affecting interests of persons not before the court, and, therefore, this court refrains from passing upon propositions not necessary to the decision of the case although passed upon by the courts below.

*Quære*, whether the acts of the foreign corporation against whom judgment was entered amounted to doing business within the State.

*Quære*, whether, under the statute of Louisiana providing for service of process on foreign corporations doing business within the State, but who have not appointed an agent therein, by service upon the Secretary of State, service upon the Assistant Secretary is sufficient in the absence of the Secretary.

*Quære*, whether the state court has jurisdiction of a suit on a transitory cause of action against a foreign corporation arising in another State, based on service of process on an agent voluntarily appointed by such corporation.

A State may by statute require a foreign corporation doing business therein to designate agents upon whom service may be made, or in default of its so doing, to provide upon whom such service may be made in suits relating to business transacted therein, but such statutory requirements cannot extend to causes of action arising in other States.

Service of process, in a suit against a foreign corporation who has not appointed a resident agent, upon the Secretary of State under the Louisiana statute providing for such service is not sufficient to give the court jurisdiction of a suit based on a cause of action arising in another State, and judgment entered thereon by default is absolutely void, and enforcement thereof, other jurisdictional facts existing, can be enjoined by the Federal court.

195 Fed. Rep. 56, affirmed.

THIS appeal raises a question of the power of a United States court to enjoin the appellant, Ephraim Simon, from enforcing a judgment alleged to have been fraudulently obtained by him in a state court, in a suit against the Southern Railway. The Company had no notice that the suit had been brought,—other than that arising from the service which purported to have been made in pursuance of the Louisiana Act No. 54, which provides (§ 1) that it shall

be the duty of every foreign corporation doing any business in this State to file a written declaration setting forth the places in the State where it is doing business, and the name of its "agents in this State upon whom process may be served."

"Section 2.—Whenever any such corporation shall do any business of any nature whatever in this State without having complied with the requirements of Sec. 1 of this act, it may be sued for any legal cause of action in any Parish of the State where it may do business, and such service of process in such suit may be made upon the Secretary of State the same and with the same validity as if such corporation had been personally served."

Availing himself of the provisions of this statute, Ephraim Simon, on December 1, 1904, brought suit, in the Civil District Court for the Parish of Orleans, against the Southern Railway Company averring that the defendant was a Virginia corporation "doing business in the city of New Orleans." The petition alleged that Simon, a New Orleans merchant and manufacturer, purchased, on February 8, 1904, a ticket from Selma, Alabama, to Meridian, Mississippi, and while riding over its lines through the negligence of defendant a collision occurred in which were inflicted upon him great personal injuries and financial loss. The petitioner claimed as damages $5,000 for personal injury; $340 for medical expenses; $4,000 for loss of profit that he would have earned; $3,000 for deterioration in the stock while he was confined to his bed and unable to sell, and $1,000 for increased cost of manufacture due to his absence from business.

There was a prayer that the Company be cited to appear and answer, and "it having failed to comply with the provisions of Section One of Act No. 54 of the Session of 1904, the service of process in this suit be made upon Hon. John T. Michel, Secretary of State, said service, so made, to be a service upon the said Southern Railway

Company, as provided for in the act aforesaid." The
plaintiff asked for judgment for $13,348.

The summons was directed to "the Southern Railway
Company, through Hon. John T. Michel, Secretary of
State of Louisiana, New Orleans," and required the
defendant to answer within ten days after service. The
Deputy Sheriff on December 3, 1904, made return that
he had served the citation and petition "on the within
named Southern Railway Co. in the Parish of East Baton
Rouge, State of Louisiana, by personal service on E. J.
McGivney, Ass't Sec'y of State, Jno. T. Michel, Sec'y of
State being absent at the time of service." The Assistant
Secretary of State, acting under the instructions of the At-
torney General, filed the citation and petition in his office.

No notice, however, was given to the Southern Railway
of the service of the citation or of the fact that suit had
been brought. It therefore made no appearance in the
suit brought against it by Simon, and, on January 10,
1905, the court, on motion of the plaintiff, ordered that
judgment by default be entered against the Railway
Company. Under the Louisiana practice, the case was
thereafter submitted to a "trial by jury on confirmation of
default." The plaintiff himself testified and other wit-
nesses were examined and on January 16 the jury returned
a verdict in favor of the plaintiff for $13,348—being the
exact amount claimed in the petition. On January 20 the
court considering "the verdict of the jury in this matter,
and that the demand of the plaintiff was proved, and the
law and the evidence being in favor of said plaintiff"
entered judgment on the verdict.

Thereafter the Company learned of the existence of the
judgment and averring itself to be a citizen of Virginia,
filed (February 6, 1905) in the United States Circuit Court
for the District of Louisiana a bill against Simon, a citizen
of Louisiana, asking that he be perpetually enjoined from
enforcing the same.

The Bill attached, as an Exhibit, a copy of the record in the state court and alleged that, in the collision referred to, Simon had received injuries which a surgeon had reported were slight; that the Company had offered him $350 in settlement. Simon refused to accept this sum but considered and discussed the acceptance of $750, which, however, was not agreed to by the defendant; the matter was temporarily left in abeyance, it being understood that negotiations were still pending and would probably result in an agreement of settlement. It was alleged that thereafter the plaintiff surreptitiously and without the knowledge of the Railway Company entered suit for $13,348, "falsely and fraudulently pretending that he had been injured in that sum"; that Simon's personal injuries were slight as shown by the report of the surgeon; that the claim for loss of profit on stock and the extra cost of manufacturing stock were claims that he well knew were fraudulent, fictitious and utterly untrue; but by false testimony he secured a verdict therefor.

The bill further alleged that the Southern Railway was not doing business in the State of Louisiana; that the service upon the Secretary or Assistant Secretary of State was not a citation upon the Railway Company and was null and void for the purpose of bringing it under the jurisdiction of the Civil District Court; that any judgment rendered upon such attempted "citation would be, if rendered without appearance of the defendant, a judgment without due process of law, and consequently, in violation of the Constitution;" that the Railway Company had never received the citation issued in the suit, nor was it advised, nor had it any knowledge of the pendency of said proceedings until after the rendition of the judgment; that the verdict of the jury having been rendered upon false testimony and without notice, it would be against good conscience to allow the judgment thereon to be enforced against the Railway Company, which has

no remedy at law in the premises and has a complete meritorious defense to the claim on which the judgment is based; that by fraud and accident, unmixed with its own negligence, the Railway Company has been prevented from making such defense.

As stated in *Ex parte Simon*, 208 U. S. 144, on another branch of this case, 'The bill further alleges that Simon will attempt to collect the fraudulent judgment by *fieri facias*, and prays as specific relief an injunction against his further proceeding under the same. A preliminary injunction was issued, after a hearing on affidavits, on June 30, 1905, and Simon appears to have obeyed the order for over two years. A demurrer to the bill was overruled in December, 1906, and a plea to the jurisdiction, filed in February, 1907, was overruled in the following May. Simon answered in August and issue was joined in the same month. Notwithstanding the injunction Simon, in contempt therefor, obtained a writ of *fieri facias* and directed a levy and the service of garnishment process to collect the judgment. . . . The punishment was a small fine, and the imprisonment was ordered until the fine was paid.'

In *habeas corpus* proceedings instituted in this court he sought to be discharged from the sentence of imprisonment imposed in the contempt case, claiming that, under Revised Statutes 720, the Circuit Court was without jurisdiction to grant the injunction and therefore the order in the contempt proceedings was absolutely void. The writ was denied.

After this court refused to grant the writ of *habeas corpus* the case, on the main bill, was referred to a Master to hear evidence and to report his conclusions of law and facts. He found that the Railway was not doing business in Louisiana in the sense of the statute; that the judgment was not fraudulent, but held it to be void because service upon the *Assistant* Secretary of State was not

the "service upon the Secretary of State" required by the statute.

The Circuit Court did not consider the question of fraud, but held (184 Fed. Rep. 959) that the state judgment was void because the Louisiana statute providing for service on foreign corporations was unconstitutional. It thereupon entered a permanent injunction against Simon as prayed for in the bill. From that decree Simon appealed making many assignments of error, attacking the jurisdiction of the court to entertain the bill and especially denying its power to grant the relief prayed for in view of the provisions of § 720 of the Revised Statutes. The Circuit Court of Appeals held (195 Fed. Rep. 56) that it had been authoritatively decided in *Ex parte Simon,* 208 U. S. 144, that the Circuit Court had jurisdiction. It found that the Railway Company was doing business in New Orleans; but ruled that Act 54 did not provide for service on the Assistant Secretary of State and hence that the judgment by default in the state court was void for want of jurisdiction of the person of the defendant. The decree of the Circuit Court was affirmed and thereupon Simon prosecuted the present appeal.

*Mr. Henry L. Lazarus,* with whom *Mr. Herman Michel, Mr. Eldon S. Lazarus, Mr. David Sessler* and *Mr. Girault Farrar* were on the brief, for appellant.

*Mr. J. Blanc Monroe,* with whom *Mr. Monte M. Lemann* and *Mr. Alfred P. Thom* were on the brief, for appellee.

Mr. Justice Lamar, after making the foregoing statement, delivered the opinion of the court.

The primary question whether the United States court had jurisdiction of the case must of course be determined by considering the allegations of the Bill. It shows

diversity of citizenship and charges that Simon was seeking to enforce by levy a judgment obtained by fraud and without notice to the Railway Company. If that be so the United States courts, by virtue of their general equity powers, had jurisdiction to enjoin the plaintiff from enforcing a judgment thus doubly void. For even where there has been process and service, if the court "finds that the parties have been guilty of fraud in obtaining a judgment . . . it will deprive them of the benefit of it." *McDaniel* v. *Traylor*, 196 U. S. 415, 423. Much more so will equity enjoin parties from enforcing those obtained without service. For in such a case the person named as defendant "can no more be regarded as a party than any other member of the community." Such judgments are not erroneous and not voidable but upon principles of natural justice, and under the due process clause of the Fourteenth Amendment, are absolutely void. They constitute no justification to a plaintiff who if concerned in executing such judgments is considered in law as a mere trespasser. *Harris* v. *Hardeman*, 14 How. 339 (default judgment entered on improper service). *Williamson* v. *Berry*, 8 How. 541; *Scott* v. *McNeal*, 154 U. S. 46; *Western Indemnity Co.* v. *Rupp*, 235 U. S. 273.

On principle and authority, therefore, a judgment, obtained in a suit of which the defendant had no notice, was a nullity and the party against whom it was obtained was entitled to relief. It serves to illustrate the existence of appellee's right and the method of its enforcement to note that under the law of Louisiana the Railway Company was not obliged to attack a void judgment in the court that rendered it—but, in a court having jurisdiction of the plaintiff's person, could have instituted a new and independent proceeding to enjoin Simon from enforcing it. See *Sheriff* v. *Judge*, 46 La. Ann. 29, where a suit was brought in the 21st District Court to enjoin the enforcement of a void judgment obtained in the 17th District

Court.  See also *Hibernia Bank* v. *Standard Guana Co.*, 51 La. Ann. 1321.  Of course, the jurisdiction of the United States courts could not be lessened or increased by state statutes regulating venue or establishing rules of procedure.  But, manifestly, if a new and independent suit could have been brought in a state court to enjoin Simon from enforcing this judgment, a like new and independent suit could have been brought for a like purpose in a Federal court, which was then bound to act within its jurisdiction and afford redress (*Hyde* v. *Stone*, 20 How. 175; *Reagan* v. *Farmers' Trust Co.*, 154 U. S. 391; *Payne* v. *Hook*, 7 Wall. 429).  The United States courts could not stay original or supplementary proceedings in a state court (*Mutual Reserve* v. *Phelps*, 190 U. S. 159); or revise its judgment.  But by virtue of their general equity jurisdiction they could enjoin a party from enforcing a void judgment.

2. The Appellant, Simon, however, contends that even if there was equity in the bill; and even if the Railway Company could have brought a new and independent suit in the state court to enjoin him from using the judgment,— yet in the present case the Federal court was without power to afford the same relief because § 720 of the Revised Statutes provides that, except in bankruptcy cases, a United States court shall not "stay proceedings in any court of a State."

In 1793, when that statute was adopted (1 Stat. 334), courts of equity had a well-recognized power to issue writs of injunction to stay proceedings pending in court,— in order to avoid a multiplicity of suits, to enable the defendant to avail himself of equitable defenses and the like.  It was also true that the courts of equity of one State or country could enjoin its own citizens from prosecuting suits in another State or country.  *Cole* v. *Cunningham*, 133 U. S. 107.  This, of course, often gave rise to irritating controversies between the courts themselves

which could, and sometimes did, issue contradictory injunctions.

On principles of comity and to avoid such inevitable conflicts the act of 1793 was passed. *Diggs* v. *Wolcott*, 4 Cranch, 179, 180 (1807) and *Hull* v. *Burr*, 234 U. S. 712 (1914), (the first and last cases in this court dealing with that question) furnish typical instances in which the statute has been applied. Those decisions, and the authorities therein cited, show that although the facts might have been such as to warrant an injunction against a suit then pending in a state court, yet § 720 prevented the Federal court from staying the proceedings in the state court.

3. But when the litigation has ended and a final judgment has been obtained—and when the plaintiff endeavors to use such judgment—a new state of facts, not within the language of the statute may arise. In the nature of the case, however, there are few decisions dealing with such a question. For where the state court had jurisdiction of the person and subject-matter the judgment rendered in the suit would be binding on the parties until reversed and there would therefore usually be no equity in a bill in a Federal court seeking an injunction against the enforcement of a state judgment thus binding between the parties. See *Marshall* v. *Holmes*, 141 U. S. 600, where *Nougué* v. *Clapp*, 101 U. S. 551, relied on by Appellant, is discussed.

There have, however, been a few cases in which there was equity in the bill brought to enjoin the plaintiff from enforcing the state judgment, and where that equity was found to exist appropriate relief has been granted. For example, in *Julian* v. *Central Trust Company*, 193 U. S. 112, a judgment was obtained in a state court, execution thereon was levied on property which, while not in possession of the Federal court, was in possession of a purchaser who held under the conditions of a Federal decree. It

was held that the existence of that equity authorized an injunction to prevent the plaintiff from improperly enforcing his judgment, even though it may have been perfectly valid in itself.

Other cases might be cited involving the same principle. But this is sufficient to show that if, in a proper case, the plaintiff holding a valid state judgment can be enjoined by the United States court from its inequitable use,—by so much the more can the Federal courts enjoin him from using that which purports to be a judgment but is, in fact, an absolute nullity. *Marshall* v. *Holmes*, 141 U. S. 597; *Gaines* v. *Fuentes*, 92 U. S. 10; *Barrow* v. *Hunton*, 99 U. S. 85.

That the United States Circuit Court here could enjoin Simon from enforcing a void judgment against the Southern Railway Company, has already been ruled in another branch of this very case. In *habeas corpus* proceedings (*Ex parte Simon*, 208 U. S. 144) he sought relief from the punishment imposed because of his violation of the temporary injunction granted in this cause. He there claimed that the attachment for contempt was void because the court was without power to issue the injunction which he had violated. On that subject this court said:

"This is not a suit *coram non judice* and wholly void by reason of Rev. Stat., § 720, forbidding United States courts to stay by injunction proceedings in any state court. The Circuit Court had jurisdiction of the cause. That must be assumed at this stage, and finally unless we overrule the strong intimations in *Marshall* v. *Holmes*, 141 U. S. 589, and the earlier cases cited in that case."

The appellant insists, however, that *Marshall* v. *Holmes*, referred to as conclusive unless overruled, does not support the jurisdiction of the Circuit Court because there no injunction was granted by the United States court.

In that case Mrs. Marshall brought a suit, in a Louisiana court, and obtained a temporary injunction restraining

Holmes, Sheriff, from levying Mayer's judgments alleged to be fraudulent. Her petition for removal to the United States court was denied and the case proceeded to final hearing in the state court where the temporary injunction was dissolved. That decree was affirmed by the Supreme Court of Louisiana. The case was then brought here to review the order refusing to allow the case to be removed to the Federal court. In discussing that issue the Appellee contended, that 'it was not competent for the Circuit Court of the United States, by any form of decree, to deprive Mayer of the benefit of his judgment at law, and that Mrs. Marshall could obtain the relief asked only in the court in which the judgment had been rendered.' In considering that contention (which is substantially the same as that urged by the Appellant Simon here), the court asked 'whether, where the requisite diversity of citizenship existed, the Circuit Court of the United States could not deprive a party of the benefit of a judgment fraudulently obtained by him in a state court?' In answering this question the court pointed out the difference between enjoining a court and enjoining a party; and the difference between setting aside a judgment for irregularity and setting it aside for fraud. It was held that the case was removable, since, there being diversity of citizenship, the Circuit Court of the United States had jurisdiction to award Mrs. Marshall protection by preventing the plaintiff from enforcing his judgments if they were found to be fraudulent in fact, saying that the

"Authorities would seem to place beyond question the jurisdiction of the Circuit Court to take cognizance of the present suit, which is none the less an original, independent suit, because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the parties before it, if the facts justify such relief, adjudge that Mayer shall

not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. 'It would simply take from him the benefit of judgments obtained by fraud.'" And if a United States court can enjoin a plaintiff from using a judgment, proved to be fraudulent, it can likewise enjoin him from using a judgment absolutely void for want of service.

4. The Appellant Simon further contends that *Marshall v. Holmes,* is not applicable here because that was a removal case; and it is urged that even if a Federal court can grant an injunction in a case removed, it cannot award the same relief in a bill originally brought in the Federal court. But that is a clear case of distinction without a difference and was not the basis of the decision.

Indeed (excluding ancillary bills *Traction Company* v. *Mining Company,* 196 U. S. 245), it seems always to have been assumed that the prohibition of § 720 applied to cases removed to the United States courts, as well as to those originally instituted therein. Such was true in *Diggs* v. *Wolcott,* 4 Cranch, 179, the first reported case arising under the law. There a bill in Chancery was filed in a Connecticut court to enjoin a suit then pending in a Connecticut court. The case was removed to the United States Circuit Court and after removal the injunction was granted. On appeal the decree was reversed on the ground that a United States court could not [even on removal] "stay proceedings in a state court." In later decisions it has been pointed out that if there was a difference between cases brought and those removed, it would have been easy, as the law then stood, for the nonresident to bring a suit for injunction in a state court, remove it to the Federal court, secure therein the injunction sought, and thus evade

the statute. *Bondurant* v. *Watson*, 103 U. S. 288; *Lawrence* v. *Morgan's Railroad*, 121 U. S. 636.

The ground of the decision in the *Marshall Case*, in *Gaines* v. *Fuentes*, 92 U. S. 10; *Barrow* v. *Hunton*, 99 U. S. 85; *McDaniel* v. *Traylor*, 196 U. S. 415; *Arrowsmith* v. *Gleason*, 129 U. S. 86; *Johnson* v. *Waters*, 111 U. S. 640; *Sharon* v. *Terry*, 36 Fed. Rep. 337 cited in *Julian* v. *Central Trust Co.*, 193 U. S. 112; *Dobbins* v. *Los Angeles*, 195 U. S. 224; *Howard* v. *De Cordova*, 177 U. S. 609, is that while § 720 prohibits United States courts from "staying proceedings in a state court," it does not prevent them from depriving a party of the fruits of a fraudulent judgment, nor prevent the Federal courts from enjoining a party from using that which he calls a judgment but which is, in fact and in law, a mere nullity. That conclusion is inevitable, or else the Federal court must hold that a judgment—void for want of service—is "a proceeding in a state court" even after the pretended litigation has ended and the void judgment has been obtained. Such a ruling would involve a contradiction in terms, and treat as valid for some purposes that which the courts have universally held to be a nullity for all purposes.

5. If, then, there was equity in the bill, and if the United States court had jurisdiction of a suit brought to enjoin the plaintiff from using a judgment alleged to be void because of fraud in its procurement and for want of service on the defendant, it becomes necessary to determine whether the Railway Company established the allegations of its bill.

The Master found as a fact that the Southern Railway was not doing business within the State of Louisiana; that there had been no fraud in the procurement of the judgment; and that the service on the *Assistant* was not the service on the Secretary of State required by the statute. He therefore recommended that a decree be entered enjoining the plaintiff from using the judgment obtained in

the District Court of the Parish of Orleans. The Circuit Court made no finding on the question of fraud, but ruled (184 Fed. Rep. 959) that the service was void because Act 54 was unconstitutional in that it contained no provision requiring the Secretary of State to give the foreign corporation notice that suit had been brought and citation served. In support of that construction it quoted at length a statement of the Supreme Court of Louisiana in *Gouner* v. *Missouri Valley Bridge Co.*, 123 Louisiana, 964. In that case service was made on the Secretary of State after the foreign corporation sued had left the State. As the court held that the statute did not apply to such absent corporation it did not finally pass on the validity of Act 54 under the state constitution, though it did say:

"This law makes no provision whatever for the service on the defendant. The officer may decline to communicate with the person sued and give no notice whatever; not even by mail. A judgment might be obtained without the least knowledge of the person sued. Under the phrasing of the statute, the duty of the officer begins and ends in his office. If such a judgment were rendered, it could receive no recognition whatever at the place of the domicile. When a petition cannot legally be served on a defendant, the court can exercise no jurisdiction over him. The service defines the court's jurisdiction."

On the other hand, the Circuit Court of Appeals (195 Fed. Rep. 56), while referring to this case, held, citing *Amy* v. *Watertown*, 130 U. S. 317, that though the Southern Railway was doing business in Louisiana, yet the default judgment was void because entered in a suit served on the *Assistant* when the statute designated the Secretary of State as the officer upon whom the citation should be served.

The broader the ground of the decision here, the more likelihood there will be of affecting judgments held by persons not before the court. We therefore purposely

refrain from passing upon either of the propositions decided
in the courts below, and without discussing the right to sue
on a transitory cause of action and serve the same on an
agent voluntarily appointed by the foreign corporation, we
put the decision here on the special fact, relied on in the
court below, that in this case the cause of action arose
within the State of Alabama, and the suit therefor, in the
Louisiana court, was served on an agent designated by a
Louisiana statute.

Subject to exceptions, not material here, every State
has the undoubted right to provide for service of process
upon any foreign corporations doing business therein; to
require such companies to name agents upon whom service
may be made; and also to provide that in case of the com-
pany's failure to appoint such agent, service, in proper
cases, may be made upon an officer designated by law.
*Mutual Reserve Ass'n* v. *Phelps*, 190 U. S. 147; *Mutual Life
Ins. Co.* v. *Spratley*, 172 U. S. 603. But this power to
designate by statute the officer upon whom service in
suits against foreign corporations may be made relates to
business and transactions within the jurisdiction of the
State enacting the law. Otherwise, claims on contracts
wherever made and suits for torts wherever committed
might by virtue of such compulsory statute be drawn to
the jurisdiction of any State in which the foreign corpora-
tion might at any time be carrying on business. The
manifest inconvenience and hardship arising from such
extra-territorial extension of jurisdiction, by virtue of the
power to make such compulsory appointments, could not
defeat the power if in law it could be rightfully exerted.
But these possible inconveniences serve to emphasize
the importance of the principle laid down in *Old Wayne
Life Association* v. *McDonough*, 204 U. S. 22, that the
statutory consent of a foreign corporation to be sued does
not extend to causes of action arising in other States.

In that case the Pennsylvania statute, as a condition of

their doing business in the State, required foreign cor-
porations to file a written stipulation agreeing "that any
legal process affecting the Company served on the Insur-
ance Commissioner . . . shall have the same effect
as if served personally on the Company within this State"
(18). The Old Wayne Life Association having executed
and delivered, in Indiana, a policy of insurance on the life
of a citizen of Pennsylvania (20) was sued thereon in Penn-
sylvania. The declaration averred that the Company
"has been doing business in the State of Pennsylvania,
issuing policies of life insurance to numerous and divers
residents of said County and State," and service was made
on the Commissioner of Insurance. The Association made
no appearance and a judgment by default was entered
against it. Thereafter suit on the judgment was brought
in Indiana. The plaintiff there introduced the record of
the Pennsylvania proceedings and claimed that, under the
full faith and credit clause of the Constitution, he was
entitled to recover thereon in the Indiana court. There
was no proof as to the Company having done any business
in the State of Pennsylvania, except the legal presumption
arising from the statements in the declaration as to solicit-
ing insurance in that State. This court said:

"But even if it be assumed that the Company was
engaged in *some* business in Pennsylvania at the time the
contract in question was made, it cannot be held that the
Company agreed that service of process upon the Insur-
ance Commissioner of that Commonwealth would alone
be sufficient to bring it into court in respect of all business
transacted by it, no matter where, with or for the bene-
fit of citizens of Pennsylvania (21). . . . Conceding,
then, that by going into Pennsylvania, without first
complying with its statute, the defendant Association
may be held to have consented to the service upon the
Insurance Commissioner of process in a suit brought
against it there in respect of business transacted by it

in that Commonwealth, such assent cannot properly be implied where it affirmatively appears, as it does here, that the business was not transacted in Pennsylvania. . . . As the suit in the Pennsylvania court was upon a contract executed in Indiana; as the personal judgment in that court against the Indiana corporation was only upon notice to the Insurance Commissioner, without any legal notice to the defendant Association and without its having appeared in person, or by Attorney, or by agent in the suit; and as the act of the Pennsylvania court in rendering the judgment must be deemed that of the State within the meaning of the Fourteenth Amendment, we hold that the judgment in Pennsylvania was not entitled to the faith and credit which, by the Constitution, is required to be given to the . . . judicial proceedings of the several States, and was void as wanting in due process of law."

From the principle announced in that case it follows that service under the Louisiana statute, would not be effective to give the District Court of Orleans jurisdiction over a defendant as to a cause of action arising in the State of Alabama. The service on the Southern Railway, even if in compliance with the requirements of Act 54, was not that kind of process which could give the court jurisdiction over the person of the defendant for a cause of action arising in Alabama. As the Company made no appearance the default judgment was void. Being void the plaintiff acquired no rights thereby and could be enjoined by a Federal court from attempting to enforce what is a judgment in name but a nullity in fact. This conclusion makes it unnecessary to consider whether the Southern Railway was doing business in Louisiana. It also makes it unnecessary to consider the question of fact as to whether the judgment was void because of fraud in its procurement.

The decree of the Circuit Court of Appeals must be

*Affirmed.*