## NUECES VALLEY TOWN-SITE CO. v. McADOO, Director General of Railroads, et al.

(District Court, W. D. Texas.   April 15, 1919.)

No. 215.

1. COURTS ⊜═293—FEDERAL COURTS—SUIT UNDER FEDERAL CONSTITUTION AND LAWS—"ARISING UNDER CONSTITUTION AND LAWS OF UNITED STATES."

Suit against the Director General of Railroads and those under him, in control and operation of railroads pursuant to acts of Congress and proclamation of President, to enjoin change of location of certain of his employés, is one arising under the Constitution and laws of the United States, within the jurisdiction of federal courts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Arise—Arising.]

2. RAILROADS ⊜═5½. New, vol. 6A Key-No. Series—FEDERAL CONTROL—INTERFERENCE BY INJUNCTION.

Control of operation of railroad by restraining order or injunction is within the prohibition of Act March 21, 1918, c. 25, § 10 (Comp. St. 1918, § 3115¾j), against interference with the possession of the Director General of the property by any process.

3. RAILROADS ⊜═5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—"INCONSISTENT" LAWS AND LIABILITIES.

Within Act March 21, 1918, c. 25, § 10 (Comp. St. 1918, § 3115¾j), providing that carriers under federal control shall be subject to all laws and liabilities as common carriers, except so far as inconsistent with the act or any order of the President, any law or asserted liability which would operate to take the possession and control of the railroad property out of the hands of the government would be so inconsistent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Inconsistent.]

4. RAILROADS ⊜═5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—SUIT AGAINST DIRECTOR GENERAL.

A suit against the Director General of Railroads, involving his right to direct and control operation of the property in his possession, is not one against the carrier, permitted by Act March 21, 1918, c. 25, § 10 (Comp. St. 1918, § 3115¾j), while it is under federal control.

5. COURTS ⊜═328(1)—FEDERAL COURTS—JURISDICTION—AMOUNT IN CONTROVERSY.

That the amount in controversy exceeds $3,000 sufficiently appears by showing that the saving to the Railroad Administration by the acts sought to be enjoined will be $400 per month; government control, unless relinquished by the President, extending by provision of Act March 21, 1918, c. 25, § 14 (Comp. St. 1918, § 3115¾n), till 21 months after peace is declared.

6. EVIDENCE ⊜═23(1)—JUDICIAL NOTICE—DECLARATION OF PEACE.

The court judicially knows that peace has not been declared.

7. RAILROADS ⊜═5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—TRANSFERRING EMPLOYÉS.

Preventing the Director General of Railroads from transferring his employés from one point to another, and from regulating their duties, would to that extent be to take the control, possession, use, and operation of the properties out of his hands, in contravention of the terms of Act March 21, 1918, c. 25, §§ 10, 11 (Comp. St. 1918, §§ 3115¾j, 3115¾k), and of the entire spirit and purpose of the act.

⊜═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

8. RAILROADS ☞5½, New, vol. 6A Key-No. Series—FEDERAL CONTROL—STATE POLICE REGULATIONS.

Provision of Act March 21, 1918, c. 25, § 15 (Comp. St. 1918, § 3115¾o), that the act shall not be construed to impair lawful police regulations of states, means that ordinary police regulations shall remain effective, except in so far as they are in conflict with the express provisions of the act, and does not allow effect to any state regulation inconsistent with the control of railroads by the government, given it by the act.

In Equity. Suit by the Nueces Valley Town-Site Company against W. G. McAdoo, Director General of Railroads, and others. On motions to remand to state court and to dissolve state court's restraining order. Motion to remand overruled; motion to dissolve sustained.

On the 24th day of December, A. D., 1918, the Nueces Valley Town-Site Company, joined by certain residents and property owners of Atascosa county, Tex., filed suit in the state district court of that county against W. G. McAdoo, Director General of Railroads of the United States, H. F. Anderson, superintendent of the San Antonio, Uvalde & Gulf Railroad, F. L. Lewis, assistant superintendent of transportation, C. W. Ridenour, trainmaster and chief dispatcher, and M. J. Vaughan, W. W. Hoffman, and J. J. Kearns, dispatchers, alleging that during the period of war between the United States of America and the empire of Germany Congress had duly authorized the taking over and operating of the railroads under the direction of the President, and that pursuant thereto the United States Railroad Administration was organized; that the defendant W. G. McAdoo was appointed Director General of Railroads, and had taken over the operation and control of the San Antonio, Uvalde & Gulf Railroad, which railroad was being operated, managed, and controlled under the direction of the Director General; that the defendants were threatening to remove the permanent division headquarters of the San Antonio, Uvalde & Gulf Railroad from North Pleasanton, in Atascosa county, to some point outside of Atascosa county, or, if they were not threatening to remove the entire permanent division headquarters, they were threatening to remove an essential and important portion and part thereof from North Pleasanton, in Atascosa county, to some outside point, and that defendants were also threatening to remove the machine shops of said railroad from North Pleasanton to some point outside of Atascosa county.

It was alleged that at a date long prior to the assumption of control of said railroad properties, to wit, on November 18, 1913, the complainant Nueces Valley Town-Site Company had conveyed certain properties in the town of North Pleasanton to the San Antonio, Uvalde & Gulf Railway Company by deed of that date, copy of which is attached to the petition, which deed recites as a consideration: "The sum of ten and no/100 dollars to us in hand paid by the San Antonio, Uvalde & Gulf Railroad Company, and in consideration of the location and establishment of the permanent division headquarters of the San Antonio, Uvalde & Gulf Railroad system, and the permanent location and operation of machine shops adequate to the maintenance of said San Antonio, Uvalde & Gulf Railroad system as now operated, embracing approximately 320 miles of main line railroad." It was alleged that this deed constituted a contract between the Nueces Valley Town-Site Company and the San Antonio, Uvalde & Gulf Railroad Company to permanently maintain the division headquarters and machine shops of that company at North Pleasanton, and that under the provisions of article 6423 of the Revised Statutes of the state of Texas this contract was binding upon the Director General of Railroads and his agents.

It was further alleged that the state of war in existence at the time the railroad properties of the corporation were taken over for operation and management and control by the United States Railroad Administration and

the Director General thereof had been concluded, and that the taking over of said railroad and the authority to manage, operate, and control the same by the Railroad Administration of the United States and the Director General was limited to 21 months after conclusion of peace, and was not intended to be permanent in its nature, and that there had been no action taken by Congress looking to the permanency of such authority, and that to the contrary there exists chaos and uncertainty at the present time as to whether or not the railroad properties should be in the immediate future returned to their owners for their operation, management, and control, or whether the period of time now existing as fixed by Congress would be later extended.

A restraining order was asked, restraining the Director General, his servants, agents, and employés, from taking any steps looking to or from removing any part of the division headquarters or machine shops of the San Antonio, Uvalde & Gulf Railroad from the town of North Pleasanton, in Atascosa county, to any point outside of said town, and that upon hearing temporary injunction be awarded continuing such restraining order until final hearing, upon which hearing it was asked that the injunction be made permanent.

This petition was presented to the judge of the Eighty-First judicial district of Texas, who, on the 23d day of December, A. D. 1918, made his ex parte restraining order, restraining the Director General, his agents, servants, and employés, from taking any steps to remove any part of the division headquarters or shops of the San Antonio, Uvalde & Gulf Railroad as then maintained at North Pleasanton, Atascosa county, Tex., from said place to any other place, until the further orders of the court.

The defendants in due time filed their petition and bond for removal of the cause to this court, upon the ground that the suit was one against officers of the United States government, that it arises under the Constitution and laws of the United States, and that the matter and amount in dispute exceeds the sum of $3,000, exclusive of interest and costs.

A certified copy of the record in the state court having been regularly filed in this court, the Director General and his codefendants, his agents and employés, filed answer, admitting the allegations of the petition that defendants were in possession of the property of the San Antonio, Uvalde & Gulf Railroad Company under and by virtue of the acts of Congress and the proclamations of the President in that regard, and had been in such possession since the 1st day of January, A. D. 1918, and alleging that Walker D. Hines, the successor of W. G. McAdoo, Director General of Railroads under the United States Railroad Administration, is an officer of and in the employ of the government of the United States in charge of operating the railroad, and that the other defendants at the time of the filing of the suit and at the present time are employés of the United States under the Director General, and are engaged in the operation of said railroad properties, and that in the efficient and economic operation of said properties it was the intention of the Director General to remove certain employés of the Director General, to wit, his assistant superintendent of transportation and several telegraph operators, to the city of San Antonio, where they could work jointly in the operation of the San Antonio, Uvalde & Gulf Railroad properties and the properties of the San Antonio & Aransas Pass Railway Company, also in the possession and under the control and being operated by the Director General; that the consolidation of these duties would result in a saving of operating expenses of $400 per month, and promote the efficiency of such operation; that the employés of the Director General thus removed from the town of North Pleasanton constituted but a small part of the force of employés at the North Pleasanton division, and that it was not intended by the Director General to remove the machine shops from that point. It was further alleged that the relief sought would directly interfere with the possession, control, and operation of the properties by the Director General, and that the restraining order issued by the state judge operated to interfere with and impede the possession, use, operation, and control of the properties by the United States government under the Director General.

The answer is duly verified under oath, and an order was asked dissolving

the restraining order of the district judge of Atascosa county of December 23, 1918.

Subsequent to the filing of said answer in this court, plaintiffs filed motion to remand the suit to the state court, and the case is now before me upon plaintiff's motion to remand, and defendant's motion to dissolve the restraining order above mentioned.

W. W. Walling, of San Antonio, Tex., and J. D. Dodson, of Laredo, Tex., for complainant.

Mason Williams, of San Antonio, Tex., and Baker, Botts, Parker & Garwood, of Houston, Tex., for defendants.

WEST, District Judge (after stating the facts as above). [1] It is not seriously questioned that the suit arises under the Constitution and laws of the United States. It is brought directly against the Director General of Railroads, and the petition clearly alleges that the Director General, his agents and employés, acting in behalf of the government of the United States, pursuant to the acts of Congress and proclamations of the President, are in the actual control and operation of the properties. The petition alleges that the state of war which induced the passage of the acts of Congress had ceased, and that there is no further necessity for such control, alleging also that the acts of the Director General in undertaking to change the location of certain of his employés are not to the public interest and are in violation of a certain alleged contract made with the corporation owning the railroad properties, which it is contended is binding upon the Director General and has effect to limit his right of control of the railroad properties in his possession.

That such a suit is one arising under the Constitution and laws of the United States is clear. It has been often held that suit by or against a corporation of the United States is a suit arising under the Laws of the United States. Osborn v. U. S. Bank, 9 Wheat. 738, 6 L. Ed. 204; Pacific Railroad Removal Cases, 115 U. S. 1, 5 Sup. Ct. 1113, 29 L. Ed. 319. In these cases it is said that the charter of incorporation, not only creates it, but gives it every faculty which it possesses. The power to acquire rights of any description, to transact business of any description, to make contracts of any description, to sue on those contracts, is given and measured by the charter, and that such charter is a law of the United States. All the faculties and capacities possessed by federal corporations are derived from their acts of incorporation, and all their doings arise out of those laws, and therefore suits by and against them are suits arising under the laws of the United States. Here the Director General, under the acts of Congress and the President's proclamations, is placed in the exclusive possession of, and is engaged, under the terms of the acts of Congress and the President's proclamations, in the direction, control, and operation of the properties. Every power which he exercises and every right which he has is derived from the laws of the United States.

The tenth section of the Act of March 21, 1918, c. 25 (Comp. St. 1918, § 3115¾j), specifically provides that no process, mesne or final, shall be levied against any property under federal control; and the

eleventh section (section 3115¾k) makes it penal for any person to interfere with or impede the possession, use, operation, or control of any railroad property taken over by the President. The petition unequivocally shows that the purpose of the suit is to interfere with the possession, control, and operation of the property by restraining the Director General from removing telegraphers and other employés from one place on the property to another place, and thereby take the management and control of the property out of the hands of the Director General and place it in the control of the district court of Atascosa county. In Bryant v. Robinson, 149 Fed. 321, 79 C. C. A. 259, it was held that a suit against a postmaster, growing out of his acts as a postmaster, arose under the Constitution and laws of the United States. In Bachrack v. Norton, 132 U. S. 337, 10 Sup. Ct. 106, 33 L. Ed. 377, an action on a marshal's bond to recover damages for wrongful levy of an attachment issued out of the Circuit Court of the United States arose under the Constitution and laws of the United States. See, also, Feibelman v. Packard, 109 U. S. 421, 3 Sup. Ct. 289, 27 L. Ed. 984; Sonnentheil v. Moerlein Brewing Co., 172 U. S. 401, 19 Sup. Ct. 233, 43 L. Ed. 492. The underlying principles of the federal jurisdiction are clearly and ably discussed in Re Neagle, 135 U. S. 1, 10 Sup. Ct. 658, 34 L. Ed. 55.

In United States Railroad Administration v. Burch (D. C.) 254 Fed. 140, the proposition was directly involved and directly ruled upon. A judgment had been obtained against the Atlantic Coast Line Railroad Company in a state court of South Carolina, after assumption of government control, upon a cause of action arising prior to that period. It had been levied upon certain real estate, and the Director General brought suit in the District Court of the United States to enjoin further proceedings under the execution. The jurisdiction of the federal court was contested, but sustained; Judge Smith (page 145) saying:

"The defendant in his return to the rule has raised the question that this court has no jurisdiction of the cause, and cannot enjoin a sale under execution under a judgment in a state court. Inasmuch as this question is a question arising in a case which asks for the enforcement of a right claimed to exist and be given under the terms of an act of Congress, it is evidently an action of a civil nature in equity, brought by an officer of the United States authorized to sue, and arising under the laws of the United States, where it appears upon the face of the bill of complaint that the right claimed by the plaintiff and sought to be enforced arises by virtue of and under a statute of the United States. The question whether or not final process can be levied against this property is one that arises under the very terms of the act of March 21, 1918; nor is the position that this court has no jurisdiction to stay the execution of a judgment recovered in the state court well taken. It has been laid down that the United States courts, by virtue of their general equity powers, have jurisdiction to enjoin the enforcement of a judgment in the state court upon usual principles under which courts of equity will enjoin the enforcement of a judgment. Simon v. So. Ry. Co., 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492. * * *

"Further, the special statutory exemption from process, created by the act of March 21, 1918, must be construed in connection with the provision of section 265 of the Judicial Code of the United States [Comp. St. § 1242], as modifying the language of that section, and creating another exception, under which the attempted enforcement of the mesne and final process from a state court may be restrained in proper cases."

While the relief sought in that case was denied upon the ground that the property levied upon was not in the possession of the Director General, the jurisdiction of the court to issue the injunction was clearly sustained.

[2] The act of March 21, 1918, specifically prohibits the interference with the possession of the Director General of the property by any process, mesne or final, and the control of the operation of the road by restraining order, or temporary or permanent injunction is as much an interference with that possession and control as if the roadbed were levied upon by attachment or execution.

[3, 4] It is contended, however, that the provisions of section 10 of the act of March 21, 1918, to the effect that carriers under federal control shall be subject to all laws and liabilities as common carriers whether arising under state or federal laws, or at common law, except in so far as may be inconsistent with the provisions of that act or any other act applicable to such federal control or any other order of the President; that actions at law or suits in equity may be brought by and against carriers and judgments rendered as now provided by law, and that in any action at law or suit in equity against the carriers no defense shall be made thereto upon the ground that the carrier is an instrumentality or agency of the federal government, nor shall any such carrier be entitled to have transferred to a federal court any action instituted by or against it which action was not transferable prior to federal control, etc., operate to change the rules heretofore established and indicate an intention upon the part of Congress to limit the jurisdiction of federal courts under pre-existing laws. It is sufficient answer to this contention to say that any law or liability or asserted liability which would operate to take the possession of the property out of the hands of the United States government would be inconsistent with the act of March 21, 1918, and inconsistent with the orders of the President by and under which he has assumed full possession and control of the properties. It is a further complete answer to this contention that this suit is not against the San Antonio, Uvalde & Gulf Railway Corporation, the owners of the properties, but is a suit direct against the agent of the President and of the Secretary of War. It is not a suit which involves any common carrier liability either of the owning corporation or of the Director General, but is a suit against the Director General directly involving his right to direct and control the operation of the property in his possession.

[5, 6] The proposition is made that the amount in controversy does not exceed $3,000. The petition for removal shows that the amount in controversy exceeds $3,000 exclusive of interest and costs. In addition to this, it is shown that the saving to the Railroad Administration by reason of the acts sought to be enjoined will be at least $400 per month. The act of Congress provides that the period of government control shall extend until 21 months after peace is declared. The court judicially knows that peace has not been declared and the fact that the President has power to relinquish any system from governmental control cannot affect the proposition that the period of control is fixed by section 14 (Comp. St. 1918, § 3115¾n)

for the period mentioned; that is to say, for 21 months after the termination of the war. It sufficiently appears, therefore, that the amount in controversy is in excess of $3,000, exclusive of interest and costs.

It follows from the foregoing that the motion to remand must be overruled.

[7] The allegations of the petition, the sworn statements of the answer which are not denied, and the evidence presented by affidavit show without controversy that the purpose of the Director General, the execution of which purpose is suspended by the restraining order, is merely to remove a division superintendent and several telegraph operators, on the railroad property involved, from North Pleasanton to San Antonio where they will engage in joint work for this property and another railroad property also under the control of the government, from which will result economy and increased efficiency of operation. Should the state court prevent the Director General from transferring his employés from one point to another, and from regulating their duties it would, to that extent, be to take the control, possession, use, and operation of the properties out of the hands of the Director General in contravention of the terms of both sections 10 and 11 of the act as well as the entire spirit and purpose of the act. No court, either state or federal, can interfere with or control the discretion of the Director General as to the operation of these properties, and any action directly interfering with his possession and control of the property is specifically forbidden by Congress.

[8] It is contended, however, that section 15 of the act (Comp. St. 1918, § 3115¾o) which is to the effect that it shall not be construed to impair the lawful police regulation of the state has the effect to subject the possession of the government to the operation of such state statutes as article 6423 which provides that the general offices of every railroad company chartered in this state shall be maintained permanently at the place named in its charter or at such place as it shall have contracted or agreed to maintain them. The proper construction of section 15 is that ordinary police regulations of the state shall remain effective, except in so far as the same are in conflict with the plain and express provisions of the act of Congress. Under that act, the possession, use, control, and operation of the railroad property is placed with the government and its officers, and no state regulation inconsistent with such evident purpose can be effective. It may be said, however, in this connection that article 6423 upon which complainant relies applies to the corporation which is not a party to this suit, and further that it has no application to divisional headquarters, and makes reference only to general offices and to machine shops, neither of which are involved in this case. As to whether a mere recitation in the deed to the San Antonio, Uvalde & Gulf Railroad Company as a consideration that that corporation agreed to permanently maintain its division headquarters at North Pleasanton is a contract which could be specifically enforced against the corporation, if it were in possession of the property itself is not decided. Article 6423 affords no justification whatever for the enforcement by

injunctive process against the Director General of a contract made with the corporation to maintain divisional headquarters at a particular point. The Constitution of the state of Texas forbids the consolidation of parallel and competing railways. This constitutional provision doubtless rests upon the broad police powers of the state. Nevertheless all of the railways of the state are, under the act of Congress, consolidated for the period declared in the act for the purpose of governmental operation, and it is not thought that the acts of the Director General in effecting this consolidation or otherwise in the control, use, and operation of these properties can be controlled by an appeal to the police powers of the state.

The motion to dissolve the restraining order must be sustained.