## GLOBE & RUTGERS FIRE INS. CO. OF NEW YORK v. BROWN et al., and four other cases.

### Nos. 431–435.

District Court, W. D. Louisiana, Shreveport Division.

May 13, 1931.

Ben E. Coleman, of Shreveport, La., Lawrence Tarlton, of Fort Worth, Tex., and Jesse F. Holt, of Sherman, Tex., for complainants.

Ponder & Ponder and R. A. Fraser, all of Many, La., and Randolph, Rendall & Freyer, of Shreveport, La., for respondents.

DAWKINS, District Judge.

Plaintiffs filed bills of interpleader against the same defendants in the above cases, and by consent they have been consolidated for the purposes of trial.

B. L. Williams was engaged in the mercantile business at Florine, in Sabine parish, La., and on December 28, 1929, his store and stock of goods were destroyed by fire. The several insurance companies named had policies covering the loss in the total sum of $1,-080 each, $200 of which was upon the building, $80 upon the furniture and fixtures, and $800 upon the stock of merchandise. On January 8, 1930, S. G. Dreyfus Company of Shreveport, La., served notices upon said companies of an indebtedness of $585.58 to it by Williams and claimed a vendor's lien and preference upon certain goods destroyed under the provisions of Act No. 263 of the Louisiana Legislature of 1916. Thereafter, on January 11, 1930, the Chapman Milling Company, a Texas corporation, filed in the district court for Grayson county of said state an attachment suit against the insured Williams and had writs of garnishment served upon the several insurance companies through their local agents in Texas, seeking to subject the proceeds of the insurance to the payment of its debt. Williams made no appearance, but the insurance companies filed answers, admitting the issuance of the policies, but without specifically acknowledging liability thereunder, for the reason that investigation and adjustment of the loss had not been completed.

On June 17, 1930, Williams filed a voluntary petition in bankruptcy.

On November 8th following, these bills of interpleader were filed, setting up the action of the milling company in Texas, as well as the claims of the trustee in bankruptcy, the Dreyfus Company, and of the Sabine State

Bank & Trust Company, the latter claiming a mortgage upon the building, against a portion of the proceeds of the policies. In the meantime, the insurance had been adjusted, and along with the filing of the petitions the amounts admitted to be due were paid into the registry of this court, the insurance companies praying that they be paid to whomever might be entitled to receive them, and that the companies be relieved from further responsibility, for costs and reasonable attorney's fees.

No sufficient reason has been advanced why the interpleader actions should not be maintained. The funds were being claimed by the several persons named, and, under the circumstances, I think these suits were in accord with and justified by the provisions of the act of Congress. National Fire Insurance Co. v. Sanders et al. (C. C. A.) 38 F. (2d) 212.

There also appears to be no dispute but that the claim of the Sabine State Bank & Trust Company to $200 of the proceeds of each policy under the mortgage clauses in its favor is well founded, and its rights to that extent will also be sustained.

The main controversy is between the trustee in bankruptcy and the Chapman Milling Company as to the validity of the proceedings in the state court of Texas, and as to whether the latter thereby obtained a valid lien upon the proceeds of the policies. If that court had jurisdiction and a lien resulted, the same was more than four months old when the petition in bankruptcy was filed, and would, of course, give the milling company a preference upon the funds against the bankrupt estate of Williams.

It must first be determined whether the state court of Texas had jurisdiction. None of the insurance companies were domiciled in that state, and it is contended by the trustee that, in as much as the policies were issued and to have effect in Louisiana, where the loss occurred, the Chapman Milling Company, a citizen of Texas, could not effectively attach or garnish their proceeds by service upon local agents of the companies appointed to do business in that state. The fact that the insurance companies did not except to the jurisdiction of the Texas court, but appeared by answer as above indicated, would not be determinative of the matter, if the proceeding was purely in rem. The issue must turn upon the scope of the Texas statute affecting nonresident corporations (as to which the federal courts are bound by the state decisions, unless there be some conflict with the constitution and laws of the United States), when applied to a proceeding in garnishment. It appears to have been settled by the Supreme Court of the United States, in Pennsylvania Fire Insurance Co. v. Gold Issue Mining & Mill. Co., 243 U. S. 93, 37 S. Ct. 344, 345, 61 L. Ed. 610, that a foreign corporation, in complying with a state statute for service of process, may subject itself to suits therein, without regard to origin of the claim. There the suit was upon a policy of insurance issued by the Insurance Company in Colorado, to an Arizona corporation, insuring buildings in the former state. The insurance company had obtained a license to do business in Missouri and to that extent had complied with its laws by filing a power of attorney "consenting that service of process upon the superintendent should be deemed personal service upon the company so long as it should have any liabilities outstanding in the state." The defendant was sued in the courts of Missouri, but excepted to the jurisdiction upon the ground that the consent was confined to business done in the state, and, if the statute were held to apply to a cause of action arising in Colorado, it would be contrary to the due process clause of the Fourteenth Amendment to the federal Constitution. The Supreme Court of Missouri held that the statute was broad enough to give jurisdiction. In disposing of the matter the Supreme Court of the United States said:

"The construction of the Missouri statute thus adopted hardly leaves a constitutional question open. The defendant had executed a power of attorney that made service on the superintendent the equivalent of personal service. If by a corporate vote it had accepted service in this specific case, there would be no doubt of the jurisdiction of the state court over a transitory action of contract. If it had appointed an agent authorized in terms to receive service in such cases, there would be equally little doubt. New York, Lake Erie & Western R. R. Co. v. Estill, 147 U. S. 591, 13 S. Ct. 444, 37 L. Ed. 292. It did appoint an agent in language that rationally might be held to go to that length. The language has been held to go to that length, and the construction did not deprive the defendant of due process of law even if it took the defendant by surprise, which we have no warrant to assert. O'Neil v. Northern Colorado Irrigation Co., 242 U. S. 20, 26, 37 S. Ct. 7, 61 L. Ed. 123. Other state laws have been construed in a similar way; e. g., Bagdon v. Philadelphia & Reading Coal & Iron

Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407 [Ann. Cas. 1918A; 389]; Johnston v. Trade Insurance Co., 132 Mass. 432.

"The defendant relies upon Old Wayne Mutual Life Association v. McDonough, 204 U. S. 8, 27 S. Ct. 236, 51 L. Ed. 345, and Simon v. Southern Railway Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492. But the distinction between those cases and the one before us is shown at length in the judgment of the court below, quoting a brief and pointed statement in Smolik v. Philadelphia & Reading Coal & Iron Co. [D. C.] 222 F. 148, —a statement reinforced by Cardozo, J., in Bagdon v. Philadelphia & Reading Coal & Iron Co., 217 N. Y. 432, 111 N. E. 1075, L. R. A. 1916F, 407 [Ann. Cas. 1918A, 389]. In the above-mentioned suits the corporations had been doing business in certain states without authority. They had not appointed the agent as required by statute, and it was held that service upon the agent whom they should have appointed was ineffective in suits upon causes of action arising in other states. The case of service upon an agent voluntarily appointed was left untouched. [Simon v. Southern R. Co.] 236 U. S. 129, 130 [35 S. Ct. 255, 59 L. Ed. 492]. If the business out of which the action arose had been local, it was admitted that the service would have been good, and it was said that the corporation would be presumed to have assented. Of course, as stated by Learned Hand, J., in [Smolik v. Philadelphia & Reading Coal & Iron Co. (D. C.)] 222 F. 148, 151, this consent is a mere fiction, justified by holding the corporation estopped to set up its own wrong as a defense. Presumably the fiction was adopted to reconcile the intimation with the general rules concerning jurisdiction. Lafayette Insurance Co. v. French, 18 How. 404, 15 L. Ed. 451; Michigan Trust Co. v. Ferry, 228 U. S. 346, 353, 33 S. Ct. 550, 57 L. Ed. 867, 874. But when a power actually is conferred by a document, the party executing it takes the risk of the interpretation that may be put upon it by the courts. The execution was the defendant's voluntary act. The Eliza Lines, 199 U. S. 119, 130, 131, 26 S. Ct. 8, 50 L. Ed. 115, 120, 4 Ann. Cas. 406.

It remains to be determined if the proceedings in the Texas court were in accordance with the statute, as well as the effect given it by the courts of that state.

In the present case, the milling company sued in the Texas court upon open account for merchandise sold and delivered to Williams in Louisiana, and alleged that by the laws of Texas it was entitled to recover, in addition to the face of the account, 10 per. cent. per annum interest and 10 per cent. attorney's fees; that Williams was a citizen of Louisiana, living at Florine in said state, and prayed for judgment for the amount of the claim, interest and attorney's fees. In an affidavit of counsel attached to the petition, plaintiff asked that notice "be issued to him (defendant) under and as provided in article 2037 of the Revised Statutes of the state of Texas of 1925, and that the same be served on the defendant as is provided in article 2038 of said statutes." In another affidavit, the "agent of and for the plaintiff" verified the amount of the account, and further swore "that the attachment sued out in this case is not sued out for the purpose of injuring or harassing the defendant and that plaintiff will probably lose its debt unless such attachment is issued." Bond in approximately double the amount of the claim was executed and a writ of attachment issued on the 11th day of January, 1930. On the same day affidavit was filed by the agent of plaintiff, in which it was set forth that "plaintiff * * * makes application for a writ of garnishment against" the insurance company, and "that the plaintiff has sued out a writ of attachment against the said defendant, B. L. Williams; that the said" insurance company was a corporation, "having an agent * * * and an office in Grayson county, Texas, and that he has reason to believe that" it "is indebted to the said B. L. Williams." Accordingly a writ of garnishment was issued, addressed to the insurance company, commanding it to answer under oath "what, if anything," it was "indebted to the said Williams," on or before the 10th day of March, 1930. Each company answered and admitted the issuance of its policy of insurance, but setting up that the same had not been adjusted, and it could not tell at that time whether it would owe the defendant anything or not. It also averred that it was entitled to recover $75 attorney's fees. The answer further prayed that on hearing there be "judgment relieving it from all responsibility created by virtue of the issuing and service of this writ of garnishment otherwise and that it be discharged in this cause and recover all costs herein incurred, and its attorney's fee," etc.

On November 6, 1930, the state court rendered judgment in favor of the Chapman Milling Company, in which it was recited that the defendant Williams had failed to appear, "though he has been duly served with

notice as provided in article 2037 of the Revised Civil Statutes of Texas, in the time and manner provided by law, * * * " and for the sum of "$1,090.69, with interest on $991.-54 thereof from this date at the rate of 10% per annum, and on $99.15 thereof from this date at the rate of 6% per annum, and all costs of this suit," and sustaining the writs of garnishment against the several companies. It further "ordered that this judgment shall be satisfied out of only such amount or amounts as it may be found and determined by the court and that the garnishees, or any of them, are indebted to the said B. L. Williams, or were indebted to him when said writs were served and filed. For all of which the plaintiff may have execution." It also found that plaintiff was entitled to 10 per cent. of the principal and interest as attorney's fees.

Apparently the amounts due by the insurance companies to Williams were not found or determined. However, I do not think that would affect the lien, if any, which was gained under the laws of Texas, since it is now admitted that each of said companies was indebted to Williams in amounts approximating the claim of the milling company.

The provision of the Texas law, authorizing suits against foreign corporations, is subsection 27 of article 1995 of the Revised Civil Statutes of Texas, reading as follows: "Foreign corporations, private or public, joint stock companies or associations, not incorporated by the laws of this State, and doing business within this State, may be sued in any county where the cause of action or a part thereof accrued, or in any county where such company may have an agency or representative, or in the county in which the principal office of such company may be situated; or, when the defendant corporation has no agent or representative in this State, then in the county where the plaintiffs or either of them, reside."

The courts of Texas have held that an insurance company which has qualified to do business in the state, by appointing agents for the service of process, etc., may have funds in its hands attached through garnishment, and the jurisdiction thus obtained over the garnishee will be sustained, notwithstanding the claim arose out of matters wholly without, and between parties who were nonresidents of, the state. Home Insurance Co. et al. v. Dick et al. (Tex. Com. App.) 15 S. W.(2d) 1028. See, also, Norton v. B. & A. Drilling Co. (Tex. Com. App.) 34 S.W.(2d) 1095.

Having concluded that the district court of Grayson county had jurisdiction generally of the insurance companies, I am of the view that the nature. of a proceeding in garnishment is such that, when jurisdiction of this character can be had of the garnishee, it necessarily follows that a debt due by him to another may be seized. Garnishment is not a proceeding strictly in rem, like the foreclosure of a mortgage or the attachment of tangible property. It has been conveniently termed quasi in rem, to the extent that property or a chose in action in the hands of a third person may be subjected to the equivalent of an actual levy, by serving such notice upon the debtor, that, if he fails to surrender it, or pays the defendant after notice, he may have judgment entered against him for the value or amount thereof which can be executed against his personal effects. Much discussion has been indulged in as to whether the situs of a debt was with the debtor or the creditor, but, in my opinion, this is unimportant. The main consideration, it would seem, is whether the jurisdiction over the garnishee is such as would give the particular court power to render judgment upon the claim if asserted therein by his creditor, the defendant in garnishment. Harris v. Balk, 198 U. S. 215, 25 S. Ct. 625, 49 L. Ed. 1023, 3 Ann. Cas. 1084; Louisville & N. R. Co. v. Deer, 200 U. S. 176, 26 S. Ct. 207, 50 L. Ed. 426; Chicago, Rock Island & Pacific Ry. Co. v. Sturm, 174 U. S. 710, 19 S. Ct. 797, 43 L. Ed. 1144.

I quote from Harris v. Balk, at page 222 of 198 U. S., 25 S. Ct. 625, 626, as follows: "Attachment is the creature of the local law; that is, unless there is a law of the state providing for and permitting the attachment, it cannot be levied there. If there be a law of the state providing for the attachment of the debt, then, if the garnishee be found in that state, and process be personally served upon him therein, we think the court thereby acquires jurisdiction over him, and can garnish the debt due from him to the debtor of the plaintiff, and condemn it, provided the garnishee could himself be sued by his creditor in that state. We do not see how the question of jurisdiction vel non can properly be made to depend upon the so-called original situs of the debt, or upon the character of the stay of the garnishee, whether temporary or permanent, in the state where the attachment is issued. Power over the person of the garnishee confers jurisdiction on the courts of the state where the writ issues. Blackstone v. Miller, 188 U. S. 189–206, 23 S. Ct.

277, 47 L. Ed. 439–445. If, while temporarily there, his creditor might sue him there and recover the debt, then he is liable to process of garnishment, no matter where the situs of the debt was originally. We do not see the materiality of the expression 'situs of the debt,' when used in connection with attachment proceedings. If by situs is meant the place of the creation of the debt, that fact is immaterial. If it be meant that the obligation to pay the debt can only be enforced at the situs thus fixed, we think it plainly untrue. The obligation of the debtor to pay his debt clings to and accompanies him wherever he goes. He is as much bound to pay his debt in a foreign state when therein sued upon his obligation by his creditor, as he was in the state where the debt was contracted. We speak of ordinary debts, such as the one in this case. It would be no defense to such suit for the debtor to plead that he was only in the foreign state casually or temporarily. His obligation to pay would be the same whether he was there in that way or with an intention to remain. It is nothing but the obligation to pay which is garnished or attached. This obligation can be enforced by the courts of the foreign state after personal service of process therein, just as well as by the courts of the domicil of the debtor. If the debtor leave the foreign state without appearing, a judgment by default may be entered, upon which execution may issue, or the judgment may be sued upon in any other state where the debtor might be found. In such case the situs is unimportant. It is not a question of possession in the foreign state, for possession cannot be taken of a debt or of the obligation to pay it, as tangible property might be taken possession of. Notice to the debtor (garnishee) of the commencement of the suit, and notice not to pay his creditor, is all that can be given, whether the garnishee be a mere casual and temporary comer, or a resident of the state where the attachment is laid. His obligation to pay to his creditor is thereby arrested, and a lien created upon the debt itself. Cahoon v. Morgan, 38 Vt. 234, 236; National Fire Ins. Co. v. Chambers, 53 N. J. Eq. 468, 483, 32 A. 663. We can see no reason why the attachment could not be thus laid, provided the creditor of the garnishee could himself sue in that state, and its laws permitted the attachment."

Having found that there was jurisdiction, it is not seriously disputed that the milling company obtained a lien upon the proceeds of the insurance through the garnishments. See Focke v. Blum et al., 82 Tex. 436, 17 S. W. 770; Thatcher v. Jeffries (Tex. Civ. App.) 91 S. W. 1091, 1092; Leon v. J. M. Radford Grocery Co. (Tex. Civ. App.) 259 S. W. 318, and Jobbers Dist. Co. v. Goldstein (Tex. Civ. App.) 265 S. W. 1085.

As to the claims of S. G. Dreyfus Company, had it been able to prove with any degree of certainty what portions of the goods upon which it had a vendor's lien were in the store at the time of the fire, I think the Act No. 263 of the Legislature of Louisiana of 1916 would have given it a lien superior to that of the milling company, or any one else, upon the insurance which covered that particular stock. The notice of its claim was given, in accordance with the statute, on January 8th before the attachment was levied in Texas. However, the evidence in this record, as I appreciate it, is too indefinite and uncertain upon which to base a judgment of preference for any amount. The claim will, therefore, have to be recognized as an ordinary one against the bankrupt estate.

From aught that appears, the claim for the price of the merchandise of the milling company was based upon a Texas contract. If so, then both the rate of interest and attorney's fees were allowable under the laws of that state and would not be affected by Louisiana statutes. See Philadelphia Warehouse Co. v. Seeman et al. (C. C. A.) 7 F. (2d) 999.

My conclusion is that the interpleader suits should be maintained and the insurance companies discharged, with costs. Each will be allowed an attorney's fee of $50, for bringing the funds into court, and the remainder of the funds will be turned over to the trustee in bankruptcy, to be administered according to law and subject to the rights of the parties as herein determined. Proper decree may be presented.