(83 South. 224)

No. 23384.

RAINES v. DUNSON et al.  HERNDON v.
SAME.  In re BERNSTEIN.

(Nov. 3, 1919.)

*(Syllabus by Editorial Staff.)*

1. SEQUESTRATION ⬤⟿15 — PROCEEDINGS
AGAINST SEQUESTRATOR BY RULE.

In view of Rev. Civ. Code, arts. 2973, 2979,
2980, a judicial sequestrator may be proceeded
against by the summary process of rule or mo-
tion, and without citation, to compel him to
turn over the property to the party to whom
it is adjudged.

2. SEQUESTRATION ⬤⟿14 — SEQUESTRATOR'S
SERVICES GRATUITOUS.

In view of Rev. Civ. Code, arts. 2974, 2975,
it is essential that a sequestrator's services
shall be gratuitous; otherwise the relation be-
comes one of hiring, instead of sequestration
or deposit.

3. SEQUESTRATION ⬤⟿1—DISTINGUISHED FROM
"DEPOSIT."

The difference between "sequestration" and
"deposit" is that the former may have for its
object both movable and immovable property,
while the latter is confined to movables, in
view of Rev. Civ. Code, art. 2976.

[Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Depos-
it; Sequestration.]

4. SEQUESTRATION ⬤⟿14—ABANDONMENT OF
TRUST BY CONVENTIONAL SEQUESTRATOR.

In view of Rev. Civ. Code, arts. 2977, 2978,
a conventional sequestrator cannot abandon
his trust, except for indispensable causes, and
then only upon the selection of his successor
by agreement of the parties to the litigation,
and, if they fail to agree, he must cite them to
have a new sequestrator appointed.

5. SEQUESTRATION ⬤⟿14—CONVENTIONAL SE-
QUESTRATOR.

A conventional sequestrator voluntarily
makes himself a party to the proceeding and
subjects himself to the jurisdiction of the court.

6. SEQUESTRATION ⬤⟿15 — PROCEEDING
AGAINST CONVENTIONAL SEQUESTRATOR.

The prevailing party may proceed by rule
or motion against a conventional sequestrator
to compel an accounting of funds held in his
hands, and the sequestrator is not entitled to
demand petition and citation before giving an
account of his trust.

Certiorari to First Judicial District Court,
Parish of Caddo; T. F. Bell, Judge.

Application by E. R. Bernstein for writs
of certiorari and prohibition to prohibit R. T.
Layne from proceeding against him by sum-
mary rule to compel an accounting for funds
held in his hands as trustee or conventional
sequestrator for the benefit of whoever might
be successful in actions between D. H.
Raines and Joe Herndon, and C. E. Dunson
and others.  Applicant's petition dismissed.

See, also, 82 South. 690, ante, p. 525.

Wilkinson & Lewis and Hall & Bullock,
all of Shreveport, for applicant.

Barret & Files and Thigpen & Herold, all
of Shreveport, for R. T. Layne, mover.

Statement of the Case.

DAWKINS, J.  The applicant herein, E.
R. Bernstein, seeks to prohibit R. T. Layne,
in whose favor judgment was rendered as an
interested third party appealing in the above
cases, from proceeding against him (Bern-
stein) by summary rule to compel an account-
ing for certain funds held in his hands, as
trustee or conventional sequestrator, for the
benefit of whoever might be successful in said
litigation.

In the two suits of Raines and Herndon
against Dunson and others, attacking certain
mineral leases, judgment was rendered in
the court below in favor of defendants, and
the plaintiffs appealed.  Subsequently, Raines
and Herndon were held to have abandoned
their appeals, and, having been denied the
right, under an allegation of interest in the
matter, to intervene in this court and oppose
the dismissal of said appeals, Layne, him-
self, prosecuted an appeal from the judgment
of the district court in said causes.  On hear-
ing of Layne's appeal (82 South. 690[1]) this

─────────────
[1] Ante, p. 525.

court reversed the judgment of the lower court as to Layne, and annulled the said first leases in so far as they affected his rights under leases obtained from the plaintiffs therein subsequent to those which were annulled, reserving to the defendants in that litigation the right to test the validity of Layne's leases.

Pending the litigation just mentioned, the parties thereto entered into the following agreement, to wit:

"This agreement, by and between E. M. Brown, Jr., and F. L. Dyer of Caddo parrish, Louisiana, and J. B. Rountree of Quitman, Ga. (the said Rountree represented herein by his agent, E. M. Brown, Jr.), hereinafter referred to as the parties of the first part; R. T. Layne, of Caddo parish, hereinafter referred to as the party of the second part; and W. R. Ramsey, of Oklahoma City, Oklahoma, hereinafter referred to as the party of the third part, witnesseth:

"Whereas the parties of the first and second parts are both the holders of oil and gas leases, covering two hundred (200) acres of land in Caddo parish, Louisiana, particularly described as follows, to wit (here follows description unnecessary to quote), the said parties of the first part having obtained the interest held by them by mesne conveyances from C. E. Dunson. as shown by the several leases covering said lands, recorded in Caddo parish, Louisiana, and the said party of the second part having acquired the interest claimed by him from J. H. Herndon and D. H. Raines, as shown by leases recorded in Caddo Parish, Louisiana; and

"Whereas a suit is now pending wherein the validity of the leases in favor of the parties of the first part is assailed and said leases are sought to be canceled and set aside; and

"Whereas said lands will depreciate in value as oil and gas land on account of drilling on adjacent lands, unless developed for oil or gas without delay; and

"Whereas the said parties of the first and second part, without in any way prejudicing the rights of either of them or of any one in said litigation now pending relative to said leases, or the rights of either under their respective leases, desire to secure the development of said property; and

"Whereas the said party of the third part has proposed to enter into a contract looking to the development of said property, the pro-

ceeds therefrom to be held by a trustee to be hereinafter provided for until the validity of said leases has been passed upon by final judgment of the Supreme Court of the State of Louisiana, thereafter to be delivered to the party or parties legally and rightly entitled to receive the same:

"Now, therefore, this agreement witnesseth: [Then follow the stipulations with reference to the development of the property.]

" * * * And all of the parties hereto do now name, designate and appoint E. R. Bernstein of Shreveport, Louisiana, to act as trustee, to receive and hold the considerations provided hereinafter, and the said E. R. Bernstein, personally present, accepts said appointment as trustee.

"All of the wells drilled under this contract on said lands shall belong jointly and equally to the party of the third part and to said trustee, and the proceeds from all of said wells shall be divided equally between the party of the third part and said trustee; the portion paid to said trustee to be used in the further development of the said property, and, after the termination of the litigation hereinabove referred to, be paid and delivered by the said trustee to the party rightly entitled to the same, as hereinafter provided.

"When the suit above referred to now pending in the Supreme Court of the State of Louisiana, and the rights of the first and second parties under their respective leases shall have been finally decided and determined then trustee shall dispose of all amounts in his hands in the following manner, to wit:

"In the event that the leases held by the parties of the first part are held to be valid and enforceable contracts, then and in such case, the trustee shall deliver to the said parties of the first part the sum of twelve thousand, five hundred dollars ($12,500.00), or his pro rata part as hereinabove provided together with interest accrued thereon, and the balance of the proceeds from the sale of oil paid into his hands, after deducting such expenses as he may (have) paid as trustee on account of development other than the three (3) first wells, as hereinabove provided; and in the event that the said leases held by the parties of the first part, are held by final judgment to be null and void and are canceled, then and in such event the said trustee shall pay to the said party of the second part. the said sum of twelve thousand, five hundred dollars ($12,500.00), or his pro rata part as hereinabove provided together with interest accrued thereon, and the balance of the proceeds from the sale of oil paid into

his hands, after deducting such expenses as he may have paid as trustee on account of development other than the three (3) first wells, as hereinabove provided."

This agreement was signed by all of the persons designated as the parties of the first part, party of the second part, party of the third part, and by the applicant herein, E. R. Bernstein, as trustee.

After the judgment of this court above referred to became final, Layne applied to the court below for a rule, directed to Bernstein, individually and as trustee, to compel an accounting for the funds coming into his hands under the terms of the agreement just quoted. An order was issued, directing Bernstein be notified, individually and as trustee, that said rule would be made absolute unless good cause to the contrary were shown on July 14, 1919. On the day fixed for the hearing, Bernstein excepted to the proceeding by rule on the ground that the applicant was without right to proceed against him in the summary manner thus adopted. This exception was overruled by the court below, and Bernstein was ordered to answer the rule; whereupon he gave notice of his intention to apply to this court for writs of certiorari and prohibition, but the lower judge proceeded with the trial, and only withheld judgment in the matter after being advised of the preliminary order issued by us herein. Since that time, we are informed that the judge has resigned, and there is therefore no return made by him in the record. However, in passing upon the exception, he rendered a written opinion, which explains fully his views and reasons for judgment, and we think we are warranted in disposing of the case as it stands.

### Opinion.

The sole question is as to whether or not plaintiff in rule before the lower court was entitled to use that summary method to obtain the accounting against Bernstein, trustee; not whether he shall be compelled to account at this time, or whether other litigation may be pending involving the object of his trust, for those are matters which should be heard on the trial of the merits of application for the rule.

An examination of the agreement above quoted discloses that, while Bernstein is called a trustee, he was, in law, a conventional sequestrator. "Conventional sequestration" is defined by the Revised Civil Code, art. 2973, as follows:

"Sequestration is a kind of deposit, which two or more persons, engaged in litigation about anything, make of the thing in contest to an indifferent person, who binds himself to restore it, when the issue is decided, to the party to whom it is adjudged to belong.

"The depositary in this case is called the sequestrator."

"Judicial sequestration" is defined as follows:

"The judicial deposit is that which is made in consequence of an order or judgment rendered by a judge in the cases provided for by the laws regulating judicial proceedings." C. C. art. 2979.

The duties of the judicial sequestrator are enumerated in article 2980, as follows:

"The appointment of a judicial guardian produces, between the person seizing and the guardian, reciprocal obligations. The guardian must use, for the preservation of the effects seized, the care of a prudent father of a family; he must produce them either for the discharge of the person who has seized them for sale, or to the person against whom the execution was levied, in case the seizure be raised.

"The obligation of the party that has seized the property consists in paying the guardian his legal fees."

[1] Thus it is clear, in our opinion, that the judicial sequestrator is compelled to produce the thing placed in his custody for the benefit of whoever may be successful in the litigation; if the plaintiff, for delivery or sale, and, if the defendant, for return to him. It would hardly be contended that, in either

case, the court could not have a compliance with its judgment in an expeditious manner (by rule), and that litigants, though successful, would be driven to another suit to obtain possession from a judicial sequestrator. Again, the office of judicial sequestrator being confined to those officers whom the law has provided to execute the orders of the judge (R. C. C. art. 2981), it follows that their custody is the custody of the court, and whatever the court has power to do may be done through its officers, who have no right or interest to contest its decrees. Hence a sheriff, constable, coroner, or other similar officer may be ruled to produce the property in his custody for subjection to the court's judgment, and, if he fail, be subject to contempt proceedings. Decuir v. Decuir, 117 La. 250, 41 South. 563; C. P. 755.

Having thus determined that the judicial sequestrator may be proceeded against by the summary process of rule or motion, and without citation, let us see what are the duties and relations of the conventional sequestrator to the court, the litigants, and the things intrusted to his custody.

[2, 3] It is essential that his services shall be gratuitous, otherwise the relation becomes one of hiring instead of sequestration or deposit. C. C. arts. 2974 and 2975. The difference between sequestration and deposit is that the former may have for its object both movable and immovable property, while the latter is confined to movables. R. C. C. art. 2976. The duties of the conventional sequestrator are defined as follows:

C. C. art. 2977. "The depositary, under this title, is not to restore the thing deposited, till after the decision of the suit, and then he must restore it to the party to whom it is adjudged."

Art. 2978. "He cannot even till then exonerate himself from the care of the thing sequestered in his hands, unless for some cause rendering it indispensable that he resign his trust.

"In that case he can deliver up the thing only to a person agreed upon by the parties concerned; and in case they do not agree, he must cite them to have a new sequestrator appointed."

Thus it is seen that, in addition to the codal definition of a conventional sequestrator as "an indifferent person, who binds himself to restore it, when the issue is decided, to the party to whom it is adjudged to belong" (C. C. art. 2973), it is made his mandatory duty "after the decision of the suit" to "restore it to the party to whom it is adjudged." C. C. art. 2977.

[4, 5] He cannot, until the termination of his trust, in the manner indicated "exonerate himself from the care of the thing sequestered in his hands, unless for some cause rendering it indispensable that he resign his trust." It would therefore seem that he cannot abandon his trust except for indispensable causes, and then only upon the selection of his successor by agreement of the parties (to the litigation), and, if they fail to agree, he must cite them "to have a new sequestrator appointed." R. C. C. art. 2978. Can it be said that he would have to file an ordinary suit against the plaintiff and defendant to have himself relieved, and, if so, why should he be compelled to interest himself in having his office filled? The only answer seems to be that suggested by the lower court, and that is that he has voluntarily made himself a party to the proceeding and subjected himself to the jurisdiction of the court. If he has the right to appear by rule for relief from his trust, when not agreed to by all parties, it must be because, in contemplation of law, he is a constructive party to the litigation. It is inconceivable that, in seeking his discharge, he would do anything other than rule the litigants into court in the same proceeding in which he was (by consent) selected.

Again, the obligations of judicial and conventional sequestrators are made the same by the express provisions of the Code, except to the extent that those of the latter may be enlarged by agreement. R. C. C. art. 2981.

[6] It is our opinion that the lawmaker intended to permit litigants to substitute for

the officer provided by law a custodian of their own choosing, and to invest him with powers and duties (if they see fit) not contemplated by the former, if they be able to find one willing to act without compensation, and thereby save the fees and expenses of a judicial sequestration. The wisdom of this provision has been very forcefully illustrated in the present litigation. However, we do not think that, on that account, it was intended that the conventional sequestrator should be permitted to demand petition and citation before giving an account of his trust.

For the reasons assigned, the preliminary rule issued herein is recalled, and applicant's petition dismissed at his cost.