## MOHAWK OIL CO. v. LAYNE.

(District Court, W. D. Louisiana. January 8, 1921.)

No. 110.

1. **Courts** ⬅️508(3)—**Execution of void judgment of state court may be restrained.**

   If judgments of a state court are void wholly or as to a particular party, and the other requisites of jurisdiction are present, a federal court may enjoin their execution, notwithstanding Rev. St. § 720 (Comp. St. § 1242), providing that a United States court shall not stay proceedings in any state court.

2. **Lis pendens** ⬅️24(1)—**Assignee of leases pending suit to annul held bound by decree holding leases were originally void.**

   Parties purchasing oil leases pending a suit against their vendor to annul the leases and after the filing of a sufficient notice of lis pendens were bound by the judgment holding that the leases, though good against the plaintiffs in that suit by reason of their acquiescence, were originally void.

3. **Judgment** ⬅️729—**In suit to annul lease, held not to affect rights if subsequent lease was valid.**

   Where, in a suit to annul oil leases, a subsequent lessee appealed from a judgment for defendants, and the court held that the leases were originally void but that plaintiffs were estopped from asserting their invalidity and annulled the leases as affecting the rights of the subsequent lessee but reserved to the defendants their right to test the validity of his leases, the judgment had no effect as against the rights of the holders of the earlier leases to maintain them if the subsequent leases were void.

4. **Mines and minerals** ⬅️58—**Leases held to prevail over earlier lease originally void but validated by acquiescence.**

   Where oil leases were originally void, but became valid as against lessors by reason of their acquiescence, a subsequent lease acquired before the validation of the earlier leases would prevail over them if valid.

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**5. Judgment ☞736—Held not to affect right to attack lease in subsequent suit without reservation to that effect.**

Where a judgment holding that oil leases, though originally void, were valid as against the lessors by reason of their acquiescence, was not intended to affect the rights of the holders as against the holder of subsequent leases, they had a right in a subsequent proceeding to attack the subsequent leases without any reservation to that effect in the judgment.

**6. Judgment ☞642—Of Supreme Court held not rendered without hearing and hence was valid and binding.**

Where, in a suit between the holders of different leases on the same oil lands, the state Supreme Court rendered judgment against plaintiffs on defendants' plea of estoppel based on plaintiff's admission in another suit that its leases were invalid but announced that it would consider an application for rehearing if plaintiff had no notice of the plea, but plaintiff moved for a rehearing attempting to explain the admissions on which the estoppel was based, and a rehearing was refused, the judgment was not rendered without a hearing but was valid and binding.

**7. Judgment ☞673—Not binding on party dismissed from suit because joining in applications for rehearing and certiorari.**

Where, in a suit by parties claiming under an oil lease, against the holder of a subsequent lease, one of the plaintiffs was dismissed on an exception for misjoinder, it was not bound by a judgment of the state Supreme Court against the other plaintiff because it joined in applications to such court for a rehearing and to the United States Supreme Court for writ of certiorari both of which were denied.

**8. Constitutional law ☞278(1)—Estoppel ☞9—Admission by transferee of leases of their invalidity held not binding on transferor.**

Where the holder of an oil lease in transferring it reserved a mortgage and a vendor's lien and agreed to credit the transferee if the leases were held invalid, and in a suit to enforce the mortgage and vendor's lien the transferee alleged that the leases were invalid, such allegation, though held to estop the transferee as against third persons, could not under Const. U. S. Amend. 14, estop the transferor to assert the validity of the leases as against third persons.

**9. Judgment ☞452—Transferor of leases reserving mortgage and vendor's lien held entitled to restrain execution of judgment.**

Where the holder of oil leases transferred them reserving a mortgage and a vendor's lien and agreeing to give the transferee credit if the leases were held invalid, and in a suit involving their validity judgment was rendered against the transferee on a plea of estoppel, the transferor was entitled to sue to restrain the execution of the judgment as against it.

In Equity. Suit by the Mohawk Oil Company against Mrs. Eula S. Layne. On motion to dismiss, and on application for injunction. Preliminary injunction continued in effect, and motion to dismiss overruled.

See, also, 270 Fed. 851.

Plaintiff, assignee of certain oil leases from Herndon and Raines to Dunson and associates, which it in turn had transferred to the Tex-la-homa Oil Corporation, brings this suit to have annulled two certain judgments of the state court, affecting said leases, and to enjoin the defendant herein from enforcing same.

The case is now before the court on motion of defendant to dismiss. The bill of complaint alleges that in 1916 Herndon and Raines executed oil and mineral leases to Dunson and associates, which leases were later acquired by Brown and Bernstein, and by them transferred to plaintiff; that Herndon and Raines filed suit in the state court for the annulment of said leases, and, their demands being rejected, appealed to the Supreme Court of the state. The

Supreme Court dismissed the appeal on the grounds that, pending same, Raines and Herndon had acquiesced in the judgment. See Raines et al. v. Dunson, 145 La. 526, 82 South. 690.

Layne, under whom the present defendant claims as legatee and sole heir, who had, pending the litigation, himself, taken a lease from Raines and Herndon, on the assumption that the Dunson lease was invalid, sought to intervene in the appeal of Raines and Herndon and urge his rights in the Supreme Court; but his intervention was dismissed, and he thereafter took an appeal from the judgment under article 571 of the Code of Practice, which is as follows:

"The right of appeal is given, not only to those who were parties to the cause in which a judgment has been rendered against them, but also to third persons not parties to such suit, when such third persons allege that they have been aggrieved by the judgment."

On this appeal the judgments of the lower court sustaining the Dunson leases were "annulled and reversed in so far as they affect the rights of Layne, appellant," and such leases were "avoided and annulled, in so far as they affect the rights of the appellant, Layne, reserving to the defendants or their assignees the right to test the validity of the leases held by Layne and which formed the basis of the appeal."

The Tex-la-homa Oil Corporation, Mohawk Oil Company, and Brown then filed suit against Layne in the state court attacking the validity of the leases. On an exception of misjoinder filed by Layne, the Mohawk Oil Company and Brown were eliminated from the suit on the ground that they had sold their interests in the leases which were then owned by the Tex-la-homa Oil Corporation. The suit proceeded with the Tex-la-homa Corporation as the sole plaintiff, and there was judgment in favor of Layne rejecting plaintiff's claim, from which judgment the latter appealed to the Supreme Court.

The Mohawk Oil Company, as assignee of the leases in question, had sold them, together with other leases and drilling paraphernalia, to the Tex-la-homa Oil Corporation, the consideration being $510,000 cash, certain shares of stock of the said corporation, common and preferred, and $1,500,000 in eight several deferred payments, to secure which a mortgage and vendor's lien on the leases was reserved. The Herndon and Raines leases being then in litigation, it was provided that, should the title to the same fail, the Tex-la-homa Oil Corporation should receive a credit on such deferred payments in the sum of $600,000.

Pending the appeal of the Tex-la-homa Oil Corporation, the Mohawk Oil Company instituted suit in the state court to foreclose its mortgage and vendor's lien on the leases and drilling equipment sold said Tex-la-homa Oil Corporation, for which corporation, in the meantime, a receiver had been appointed by this court. The receiver, through his attorneys (appointed by the court and not the same attorneys who had been in charge of the litigation with Layne) filed suit in the state court setting forth the terms of the contract by which said leases had been acquired from the Mohawk Oil Company, and alleging that it had been evicted from the Herndon and Raines leases, and that it had no title thereto; the same having been declared void by the Supreme Court of the state. The prayer of the petition was for the cancellation of the contract by which petitioner had purchased the leases and for repayment of the consideration paid. In the alternative, the petitioner prayed that the value of the Raines and Herndon leases be fixed at one-half of that of all the properties conveyed by said contract, and that its indebtedness for the balance due be credited with the sum of $1,575,000. Petitioner finally prayed for a writ of injunction restraining the sheriff of the state court from selling the property under the foreclosure proceedings instituted by the Mohawk Oil Company.

After argument in the Supreme Court of the appeal of the Tex-la-homa Oil Corporation in its suit against Layne, the latter filed in the Supreme Court a plea of estoppel, attaching thereto a certified copy of the record in the suit of the Mohawk Company against the Tex-la-homa Corporation last referred to, which plea was based on the assertion that the Tex-la-homa Oil Corporation had admitted and judicially asserted the invalidity of the leases in question.

The Supreme Court, without remanding the case for the taking of evidence on such plea, sustained the same, and dismissed the appeal. See Mohawk Oil Co. v. Layne, No. 23853 in the Supreme Court, not yet (officially) reported, 86 South. 322. Thereupon the Mohawk Oil Company and Brown joined the Tex-la-homa Oil Corporation, through its receiver, in application for rehearing, which was opposed by Mrs. Layne, and which the Supreme Court refused. The receiver of the Tex-la-homa Oil Corporation, the Mohawk Oil Company, and Brown then applied to the United States Supreme Court for a writ of certiorari or review of the judgment of the Supreme Court of the state, which application was likewise denied. 254 U. S. ——, 41 Sup. Ct. 148, 65 L. Ed. ——.

Plaintiff's bill in the present case alleges:

That the judgment on the Layne appeal involving the Dunson lease is null and void for the reason that the defendants therein were given no opportunity to contest the lease claimed and asserted by Layne; that such judgment was invalid against defendants who were not parties to said suit, and who had acquired title to the lease pending the litigation on the faith of the record which disclosed no notice of lis pendens;

That the judgment of the Supreme Court in the case of Tex-la-homa Oil Corporation against Layne (No. 23853) was null and void, even as to the Tex-la-homa Oil Corporation, the only plaintiff left in the case after the elimination by the trial court of the Mohawk Company and Brown, for the reason that the case was decided on pleadings filed for the first time in the Supreme Court without notice or opportunity given to contest the plea of estoppel, in violation of the Fourteenth Amendment of the Constitution of the United States, prohibiting the taking of property without due process of law.

That both of said judgments were invalid in so far as plaintiff is concerned for the reason that it was not a party to either and was not given an opportunity to be heard.

It is alleged that the denial of plaintiff's right to be heard in said suits was obtained by fraud and ill practices, and that, if plaintiff or Brown had been given a hearing, they could have shown that Layne had permitted his mineral leases to lapse, and if same had not lapsed, that the acquisition of same by him was the purchase of a litigious right, which they were entitled to have themselves relieved of on paying to him of the cost of such purchase, and that an effort was made on the part of Brown and plaintiff to ascertain the amount paid by Layne for the mineral leases without avail, and that, had plaintiff been given the opportunity before the dismissal of the Tex-la-homa Oil Corporation's appeal in its suit against Layne on the plea of estoppel, it could have shown that said plea of estoppel was not well founded for the reason that the allegations made by the receiver of the Tex-la-homa Oil Corporation were made in error of the true facts and because they were unsuccessfully made, and further constituted no estoppel in so far as Mrs. Layne was concerned, because she was not a party to the suit. That plaintiff was thus deprived of its property without a hearing, and without due process of law, and that it would be unconscionable and contrary to equity to permit the execution of such judgments as against plaintiff herein.

After argument of the motion to dismiss the present suit, and while same was under advisement by this court, plaintiff herein filed application for a temporary restraining order and preliminary injunction against defendant, alleging that she was attempting to execute said judgments by a rule in the state court on the pipe line companies who were purchasing the oil taken from said land, to show cause why the price thereof should not be paid to her. (Pending the litigation, it appears the lease had been developed by a third party, Ramsey, under an agreement between the Tex-la-homa Oil Corporation and Layne, by which Ramsey was to have one-half of the net profits and Layne or the Tex-la-homa Oil Corporation, as might thereafter be determined by the court, was to have the other half.) An order was signed temporarily restraining defendant from enforcing such judgments, and she was further ordered to show cause why a preliminary injunction should not issue. The answer to this latter rule to show cause presents substantially the same

issues presented in the pending suit, and the two cases, Nos. 110 and 111 on the docket of this court, will therefore be consolidated and considered together.

The motion to dismiss avers that this court is without jurisdiction; that the judgments of the state court in question constitute res adjudicata of all the issues herein presented; and that the bill does not disclose facts sufficient to constitute a valid cause of action in equity; that prior to the acquisition by plaintiffs of the Dunson leases, Layne had recorded, as provided by law, a notice of lis pendens, the effect of which was to bind future purchasers by the pending litigation; that pending Layne's appeal in the case against Dunson, the latter's assignees, who were later the assignors of the Mohawk Oil Company, as parties of the first part, and Layne, as party of the second part, in order to secure the development of the lease, entered into a contract with one Ramsey, party of the third part, by which, without prejudicing the rights of either Layne or the Mohawk Oil Company, the leases in question were transferred to Ramsey, who agreed to develop the property for the joint account of himself and a trustee named in the agreement, to act for the parties of the first and second part and to hold the funds received by him until the final termination of the litigation between said parties as to the validity of their respective leases. See Raines v. Dunson et al., 145 La. 1011, 83 South. 224.

The answer further avers that the filing of suit by the Mohawk Oil Company and Brown, together with the Tex-la-homa Oil Corporation, against Layne, in accordance with the reservation of their rights made by the Supreme Court in the case of Raines and Herndon against Dunson et al., was a recognition of the validity of such judgment, and that their joining in the application of the Tex-la-homa Oil Corporation for rehearing in the case against Layne in the Supreme Court, and their again joining the Tex-la-homa Corporation in its subsequent application to the United States Supreme Court for writ of certiorari or review, estops plaintiff herein from contesting the legality of the judgment rendered in such suit; that the judgments in question, being now final, defendant is entitled to have execution on same; and that this suit is based on false allegations and suppression of facts, and its sole purpose is to annoy and harass defendant and to delay her in the enforcement of such judgments.

Hall & Bullock and Wilkinson, Lewis & Wilkinson, all of Shreveport, La., for plaintiff.

Thigpen & Herold and Barret & Files, all of Shreveport, La., for defendant.

JACK, District Judge (after stating the facts as above). [1] If the judgments in question be void, or if they be void as to the plaintiff in this proceeding, the other requisites of jurisdiction being present, this court would have jurisdiction to enjoin their execution. The same right exists in the state courts under the well-established jurisprudence. See Sheriff v. Judge, 46 La. Ann. 29, 14 South. 427; Hibernia National Bank v. Standard Guano Chemical & Manufacturing Co., 51 La. Ann. 1321, 26 South. 274. As was said by the Supreme Court of the United States in Simon v. Southern Railway Co., 236 U. S. 123, 35 Sup. Ct. 257, 59 L. Ed. 492:

"Of course, the jurisdiction of the United States courts could not be lessened or increased by state statutes regulating venue or establishing rules of procedure, but, manifestly, if a new and independent suit could have been brought in a state court to enjoin Simon from enforcing this judgment, a like new and independent suit could have been brought for a like purpose in a federal court, which was then bound to act within its jurisdiction and afford redress. * * * The United States courts could not stay original or

supplementary proceedings in a state court * * * or revise its judgment. But by virtue of their general equity jurisdiction they could enjoin a party from enforcing a void judgment."

Under section 720 of the Revised Statutes (Comp. St. § 1242), it is provided that a United States court shall not "stay proceedings in any court of a state," but, as stated by the court in the Simon Case:

"* * * When the litigation has ended and a final judgment has been obtained—and when the plaintiff endeavors to use such judgment—a new state of facts, not within the language of the statute may arise. In the nature of the case, however, there are few decisions dealing with such a question, for where the state court had jurisdiction of the person and subject-matter, the judgment rendered in the suit would be binding on the parties until reversed and there would therefore usually be no equity in a bill in a federal court seeking an injunction against the enforcement of a state judgment thus binding between the parties. * * *

"There have, however, been a few cases in which there was equity in the bill brought to enjoin the plaintiff from enforcing the state judgment, and where that equity was found to exist appropriate relief has been granted. For example, in Julian v. Central Trust Company, 193 U. S. 112, a judgment was obtained in a state court, execution thereon was levied on property which, while not in possession of the federal court, was in possession of a purchaser who held under the conditions of a federal decree. It was held that the existence of that equity authorized an injunction to prevent the plaintiff from improperly enforcing his judgment. even though it may have been perfectly valid in itself.

"Other cases might be cited involving the same principle. But this is sufficient to show that if, in a proper case, the plaintiff holding a valid state judgment can be enjoined by the United States court from its inequitable use—by so much the more can the federal courts enjoin him from using that which purports to be a judgment but is, in fact, an absolute nullity. Marshall v. Holmes, 141 U. S. 597; Gaines v. Fuentes, 92 U. S. 10; Barrow v. Hunton, 99 U. S. 85."

In the Simon Case, Simon had obtained in the state court in Louisiana a large judgment against the railway company for damages for personal injuries on a cause of action which arose in Alabama. Process was served on the Secretary of State on the allegation that the defendant was a foreign corporation doing business in the state, whereas, in fact, it was not doing business in the state. The suit proceeded to judgment by default for a fraudulently exaggerated sum, without the knowledge of the railway company, which, on learning of the judgment, and that an attempt would be made by Simon to enforce it by fieri facias, filed suit in the United States court and obtained an injunction restraining him from doing so.

The case was first before the Supreme Court on Simon's application for writ of habeas corpus, he having been sentenced to prison for violation of the injunction. Ex parte Simon, 208 U. S. 144, 28 Sup. Ct. 238, 52 L. Ed. 429. Later the case came up on Simon's appeal from the decree granting the injunction. 236 U. S. 115, 35 Sup. Ct. 255, 59 L. Ed. 492. In passing on Simon's appeal, the court, quoting from Marshall v. Holmes, 141 U. S. 597, 12 Sup. Ct. 65, 35 L. Ed. 870, said:

"'Authorities would seem to place beyond question the jurisdiction of the Circuit Court to take cognizance of the present suit, which is none the less an original, independent suit, because it relates to judgments obtained in the court of another jurisdiction. While it cannot require the state court itself to set aside or vacate the judgments in question, it may, as between the

parties before it, if the facts justify such relief, adjudge that Mayer shall not enjoy the inequitable advantage obtained by his judgments. A decree to that effect would operate directly upon him, and would not contravene that provision of the statute prohibiting a court of the United States from granting a writ of injunction to stay proceedings in a state court. "It would simply take from him the benefit of judgments obtained by fraud." ' And if a United States court can enjoin a plaintiff from using a judgment, proved to be fraudulent, it can likewise enjoin him from using a judgment absolutely void for want of service. ❋ ❋ ❋

"The ground of the decision in the Marshall Case, in Gaines v. Fuentes, 92 U. S. 10; Barrow v. Hunton, 99 U. S. 85; McDaniel v. Traylor, 196 U. S. 415; Arrowsmith v. Gleason, 129 U. S. 86; Johnson v. Waters, 111 U. S. 640; Sharon v. Terry, 36 Fed. Rep. 337, cited in Julian v. Central Trust Co., 193 U. S. 112; Dobbins v. Los Angeles, 195 U. S. 224; Howard v. De Cordova, 177 U. S. 609, is that while section 720 prohibits United States courts from 'staying proceedings in a state court,' it does not prevent them from depriving a party of the fruits of a fraudulent judgment, nor prevent the federal courts from enjoining a party from using that which he calls a judgment but which is, in fact and in law, a mere nullity. That conclusion is inevitable, or else the federal court must hold that a judgment—void for want of service—is 'a proceeding in a state court' even after the pretended litigation has ended and the void judgment has been obtained. Such a ruling would involve a contradiction in terms, and treat as valid for some purposes that which the courts have universally held to be a nullity for all purposes."

In that case, finding that service on the Secretary of State under the Louisiana statute would not be effective to give the state court jurisdiction over a nonresident defendant as to a cause of action arising in another state, the Supreme Court, without passing on the question of fraud, affirmed the decree of the Court of Appeals granting the relief sought.

The allegations of plaintiff's bill, if true, bring the case within the jurisdiction of this court, so that the court may proceed to the inquiry as to whether the judgments attacked were, in fact, void.

In the first case, Raines and Herndon v. Dunson, there was no question as to the court's jurisdiction as between the parties to the suit, that is to say, the plaintiffs and defendants, and Layne, a third party in interest, whose right to an appeal was specifically given by the Code of Practice.

[2-4] The court in effect held that, while the Dunson leases were originally void, the plaintiffs, Raines and Herndon, were estopped from asserting it, by reason of their having acquiesced in the judgment of the lower court holding the leases valid, but that such acquiescence would not, of course, affect such rights as Layne might have under a subsequent lease; and that, if Layne's lease was valid, it would take precedence over the Dunson leases, validated by the acquiescence of Raines and Herndon. It is true that Dunson's assignees, including the present plaintiff, were not given an opportunity to be heard in the proceeding in which the Dunson lease was decreed invalid, but they had purchased pending the litigation, after the filing of a notice of lis pendens, which, though not specific as it should have been, was, I think, under all of the circumstances, sufficient. Their rights, therefore, were no greater than those of Dunson and his associates. The judgment did not attempt to pass on the validity of the Layne lease which was not then in question, the court having to accept as true, for the purpose of his ap-

peal, the allegation of Layne that he had a valid lease. Consequently, it follows that said judgment was not void, that it was binding as between the parties and the Mohawk Company claiming under them, but had no effect, and was intended to have no effect, as against the rights of the assignees of Dunson to maintain their lease as against Raines and Herndon, and, likewise, as against Layne, if his lease was not valid. If the Layne lease was valid, having been acquired from Raines and Herndon before the Dunson lease was made good by their acquiescence, such lease would prevail over the latter.

In the second case, Tex-la-homa Oil Corporation, Mohawk Oil Company, and Brown against Layne, the court had jurisdiction of the one plaintiff left in the suit, Tex-la-homa Oil Corporation, and as against it the judgment is valid and binding.

[5] The assignees of the Dunson leases, made good by the acquiescence of Raines and Herndon, had the right, in a subsequent proceeding to directly attack the Layne lease, without any reservation to that effect in the judgment of the Supreme Court; and, consequently, the reference to such reservation in the subsequent suit filed against Layne had no effect whatever, as against the Mohawk Company, which, however, was bound by the judgment in the Dunson case for the reasons heretofore stated.

[6] The Supreme Court of Louisiana, in dismissing the appeal in the suit against Layne, without remanding the case for evidence on the plea of estoppel, acted on certified copies of the record in the lower court in the suit of the receiver of the Tex-la-homa against Mohawk Company. The court, however, took occasion to say that it did not appear that appellant had had notice of such plea, and that, if such were a fact, an application for rehearing would be favorably considered. Thereupon such application was filed by the receiver of the Tex-la-homa Corporation, but not on the grounds that he had received no notice of such plea, which the affidavit of opposing counsel showed he had, in fact, been given. The attorney for the Tex-la-homa Oil Corporation made an explanation of how the judicial allegations on which the plea of estoppel was based came to be made. The Supreme Court evidently did not consider such explanation sufficient, even though true, and refused to grant a rehearing. As to the Tex-la-homa Oil Corporation, the only party plaintiff then left in the case, the judgment on the plea of estoppel was not without hearing, and, so far as such corporation is concerned, is valid and binding.

[7] There has been, however, no judgment obtained contradictorily with the Mohawk Oil Company, plaintiff herein, sustaining the validity of the Layne lease. At the very threshhold of the suit to determine that question, the Mohawk Oil Company was thrown out of court on an exception of misjoinder filed by Layne. To sustain the contention of defendant herein that the Mohawk Oil Company is bound by the judgment in the last-named case on the ground that after being dismissed from the suit, on such exception, it joined the remaining plaintiff in an application to the state Supreme Court for a rehearing from its judgment sustaining the plea of estoppel and dismissing the appeal, and that later on it again joined with such plaintiff in an application to the Unit-

ed States Supreme Court for writ of certiorari or review, would be to hold that, by very reason of its efforts to obtain a hearing, it lost its right to be heard. It cannot be said that the Mohawk Oil Company has had its day in court. The issues made by it in its attack on the Layne lease have never been met and determined. If the defendant has any rights, they consequently cannot be affected by such judgment. Therefore the query is: Has the plaintiff property rights which he has not been given the opportunity to defend, and, if he has, would the enforcement of such judgment constitute a taking of his property without due process of law?

[8] Although the Mohawk Company had transferred the leases in question to the Tex-la-homa Oil Corporation, it was still the real party in interest. The credit portion of the price of the leases in question and others included with them was $1,500,000, and the contract of sale provided that, should the title to said Raines and Herndon leases be not valid, said Tex-la-homa Oil Corporation should be allowed a credit of $600,000 on such indebtedness. Not alone was the Mohawk Company warrantor of the validity of such leases, but it was the holder of a mortgage and vendor's lien on same to secure the payment of the balance of the purchase price. It had, under such contract, even reserved ownership in the leases until all deferred payments should be made, though this provision was perhaps waived by its election to foreclose its mortgage, rather than to rescind the sale. The Tex-la-homa Corporation was at the time in the hands of a receiver—it is now in bankruptcy.

The Mohawk Company was proceeding to foreclose this mortgage and enforce its lien, when, in its petition to enjoin such proceeding, the allegations were made by the attorneys for the receiver on which the plea of estoppel was based. Ordinarily, a warrantor is called in by the defendant to defend a petitory action or ejectment suit, but, in this case, the warrantor was not permitted to remain in the suit and establish the validity of the leases sold its vendee.

Is the plaintiff to be deprived of this valuable property right because the receiver of its vendee corporation, through its attorney appointed by the court, unfamiliar with the previous litigation, had declared that the title to the lease had failed? Should plaintiff be deprived of such a property right, even had the receiver, in making such allegations, been fully cognizant of the fact that the title to the lease was then being litigated in a suit pending in the Supreme Court? If so, then a bankrupt defendant in a petitory action may, by a confession of judgment, deprive his vendor of his lien and mortgage, and this though he may have purchased the property entirely on credit, and without paying one dollar cash to his vendor.

While one may be estopped by his own admissions or allegations, he cannot be estopped by the allegations of his adversary. After taking its appeal from the adverse judgment of the lower court, the effect of which was to invalidate its leases, the receiver of the Tex-la-homa Oil Corporation, thereafter appointed, could not, by shifting positions and declaring said leases void in a suit to rescind the contract by which they were acquired, in any wise prejudice the rights of the Mohawk Company if the leases were valid, in fact. Such allegations could be

270 F.—54

pleaded as estoppel only to defeat the leases so far as the Tex-la-homa Corporation was concerned, just as the acquiescence of Raines and Herndon in the first suit was pleaded and held to have estopped them from denying the validity of the Dunson leases; but such acquiescence was held in no manner to have affected the rights of Layne.

It is true that rather an anomalous situation would be presented if the leases heretofore decreed invalid as to the party having the present title should now be decreed valid as to such party's vendor. It is not for this court at the present time to say how such a situation might be equitably adjusted. Perhaps the practical effect of holding the lease valid as to the Mohawk Company, while invalid as to its vendee because of the latter's judicial allegations, might be to give Layne the right to claim priority for his lease on payment to the Mohawk Company of the estimated balance due it by the Tex-la-homa Corporation on the Dunson leases, or, if this might be difficult to determine, owing to the fact that the Dunson leases were sold together with others, on payment to the Mohawk Company of the $600,000 agreed by it to be credited the Tex-la-homa Corporation on its obligation if the title to such leases failed.

That it was not intended by the Supreme Court of the state that its judgment dismissing on the plea of estoppel the suit of the Tex-la-homa Corporation should have, as against the Mohawk Company, the effect of finally invalidating the Dunson leases, would appear evident from its ruling on Layne's appeal in the Raines and Herndon Case. Referring to the cases cited in support of the contention, then made, that the effect of the judgment dismissing the appeal of Raines and Herndon on the ground of their acquiescence in the judgment was to cut off any claim that might be urged by Layne, the court said:

"In none of them (such cited cases) do we find that the courts have held that one litigant, by acquiescence, collusion, or otherwise, may bind or preclude other parties at interest against their consent or over their protest."

For a greater reason such allegations and acquiescence could not be held to bind a third party in interest when made in a suit seeking to avoid liability to such third party for the price of the lease alleged to be invalid.

[9] This very question of the right of the Mohawk Company to be heard is now pending on its appeal to the Supreme Court of the state from the order of the trial court eliminating it as a party plaintiff from the suit against Layne on the latter's exception of misjoinder. If the state district court was in error in thus eliminating the Mohawk Company as one of the parties plaintiff in such suit against Layne, it would seem that plaintiff would clearly have the right to enjoin the execution of the judgment, the effect of the enforcement of which would be to take from plaintiff valuable property before its rights could be heard and determined by the Supreme Court. On the other hand, if the state district court was not in error in holding that, under the state practice, the Mohawk Company had no standing in court to assert and defend the validity of the leases held by its vendee, in which the Mohawk Company was so materially interested, then, under the allegations of the

bill of complaint herein, this case is one in which it is peculiarly the province of a court of equity to grant its relief.

The plaintiff in its bill avers that the Layne lease is invalid and the grounds on which the allegations are based are serious. Whether they are sufficient, it is not for this court at this time to determine. It suffices to say that, taking for true the allegations of plaintiff's bill, except as otherwise shown by affidavits and exhibits filed, until the plaintiff has had a hearing and his rights have been adjudicated, he is entitled to the equitable writ of injunction under the Fourteenth Amendment of the federal Constitution, prohibiting the taking of one's property without due process of law.

While the first judgment complained of, that in the case of Raines and Herndon v. Dunson et al. (No. 23384) 145 La. 1011, 83 South. 224, in the Supreme Court of the state, is valid and binding against the plaintiff herein, that judgment did not, in itself, finally determine the validity of the Dunson leases, and can be enforced only in connection with the subsequent judgment in the case of Tex-la-homa Corporation v. Layne (No. 23853) 86 South. 322, in the Supreme Court, the effect of which was to finally invalidate the Dunson leases as against those held by Layne. But the judgment in the latter case was not against the Mohawk Company, which was not permitted to remain a party to the suit, and consequently such judgment was not, I think, intended to be binding on said company, as to whom it was void and of no effect. Consequently, plaintiff is entitled to an injunction as prayed for, restraining defendant from attempting to enforce said judgments.

It follows that the preliminary writ of injunction herein issued should be continued in effect, and that the motion to dismiss plaintiff's bill should be overruled.

A decree will be prepared and entered in accordance with the views herein expressed.