This is a proceeding by rule to compel Dr. Thomas Stark, in his official capacity as Sheriff of the Parish of Lafourche, to return to Eloie Foret, plaintiff, in rule, a cow.
On May 3, 1940, Dr. Stark, through one of his deputies, in his official capacity as Sheriff for the Parish of Lafourche, under a search warrant issued by one of the justices of the peace for the parish of Lafourche, to search the premises of plaintiff for stolen cattle, seized and took into custody a cow claimed to be owned by one Ignace Pitre. The deputy sheriff, in company with the claimant of the cow, then made an affidavit before the Justice of the Peace at Thibodaux, charging the plaintiff with the theft of the cow, arrested and incarcerated him, and later plaintiff was released on bond. Thereafter, on September 12, 1940, the Grand Jury for the Parish of Lafourche returned an indictment against the plaintiff charging him with having stolen the said cow, the property of Ignace Pitre. Thereafter, on March 18, 1942, the district attorney for the Parish of Lafourche entered a nolle prosequi in the matter.
In his petition for the rule, plaintiff avers that at the time of the seizure, he had the control, possession and ownership of the said cow, in his pasture situated in the Parish of Lafourche, having purchased the said cow from Clem Weimer; and since the purchase until the seizure, he had the continuous possession and ownership thereof; that promptly after the purchase of the cow, the cow was marked for identification with his brand on the right hip with the letters "FY" and the tips of both ears were cut off and also the horns.
The defendant excepted to the proceeding by rule. With reservation of his exception, the defendant, for answer, denied the allegations of plaintiff's petition, and in further answer avers that the cow purportedly purchased by plaintiff from Clem Weimer was not the cow under seizure; that he has conducted an investigation and is convinced that the cow seized is the property of Ignace Pitre; and that under the circumstances the said cow should be turned over and surrendered to Ignace Pitre.
The trial of the case on the merits resulted in a judgment recalling and rescinding the rule issued and dismissing plaintiff's suit at his costs. Plaintiff appealed. Defendant moved to dismiss the appeal for want of jurisdiction of this court.
The motion to dismiss the appeal is based on the fact that the suit involves the ownership of a cow, the value of which is the sum of $40, thereby being much lower than the minimum amount of our jurisdiction as fixed by the Constitution. *Page 81 
There is nothing in the evidence to indicate the value of the cow except that she weighs approximately 500 pounds. The plaintiff's evidence is to the effect that the cow was born in the swamps and was somewhat wild and hard to pen. The pictures of the cow offered in evidence indicate that she is an ordinary type of cow, and it is not contended nor shown that she has any other value, such as a milch cow.
The plaintiff offered affidavits in this court to show the value of the cow. In his own affidavit, he sets forth that he had purchased this cow for breeding purposes, and that while in his possession the cow had given birth to one calf, and while in the custody of the Sheriff, the cow had given birth to two calves, one of which had died. He values the cow to him at the sum of $250 or more. However, he sets the value of the cow for any purpose at $75. He also filed an affidavit signed by Joseph Brown and Charles Zerangue, in which they declare the cow to be of a value of not less than $75. In the affidavit of Clem Weimer, the affiant states that the cow he sold to plaintiff was of good Jersey breed, and that milk cows of the same breed give daily approximately 2 1/2 gallons of milk. Mr. Weimer does not attempt to fix the value of the cow in litigation.
The defendant offered affidavits in this court to show the value of the cow in litigation. In the joint affidavit of Helaire Templet and Thomas Scott, affiants declare they know the cow in litigation; that they are engaged in the cattle business and are familiar with the prices and values of cattle and that at the time of the trial of the case the cow was worth approximately $40. In the affidavit of Mr. Paul A. Cancienne, the affiant states that he is engaged in the meat market in the town of Thibodaux and that the prevailing market price of an ordinary fat Jersey cow weighing 500 pounds is 8 to 8 1/2 cents per pound on foot. In the joint affidavit of Helaire Templet and Ivy Templet, affiants state that the market price of a similar cow as the one in litigation is approximately eight cents per pound, and that accordingly the value of the cow in litigation is $40. Affiants annexed quotation of the price of cattle on the New Orleans market of date of November 2, 1943, and make it a part of their affidavit. According to the annexed document, the price is $7.50 to $8 per cwt.
There was born of the cow, a calf, which was approximately four months old and weighed approximately 300 pounds at the time of the trial. The plaintiff and his two affiants Joseph Brown and Charles Zerangue fix the value of this calf at $50. While defendant's affiants place the value of this calf at $30 to $35.
Thus, according to the plaintiff and his affiant, the cow and calf have a value of over one hundred dollars, while according to defendant's affiants the cow and calf have a value of less than $100. We are unable to conclusively arrive at a value. The present trend of the jurisprudence is to favor appeals. A motion to dismiss an appeal for want of jurisdiction will not be granted, unless it is evident that there is good ground. We therefore resolve the doubt existing in this case in favor of the plaintiff. The motion to dismiss the appeal is denied.
As previously stated, the defendant excepted to the form of procedure, that is, by rule. In this court, defendant is again urging his exception.
In the case of Byrnes et al. v. Richardson, Sheriff,165 La. 1025, 116 So. 496, in answer to our certification, the Supreme Court says: "It is also clear that money or property actually held as evidence in a criminal court cannot be taken from the custody of such court without its consent, and as long as said money or property is needed as evidence * * *. But, when saidproceedings have terminated, and a controversy arises over theright to such property or money, then a `civil' action arises, which is to be decided in a court having competent `civil' jurisdiction." Thus, it is readily seen that all the rules of procedure governing "civil" actions apply.
"Civil action" is defined by Article 9 of our Code of Practice as "one which is brought for private interest, such as a suit to obtain the payment of a sum due, the restitution of property, or reparation for injury done by words or action". Code of Practice, Article 97, provides that "Civil actions may be prosecuted, according to the nature of the case, by three kinds of proceedings, to wit: Ordinary, executory, or summary". Code of Practice, Article 98, provides that "The proceedings are ordinary when citation takes place, and all the delays and forms of law are observed. * * * They are summary when carried on with rapidity, and without the observance of the formalities required in ordinary cases, as when courts provide for *Page 82 
the administration of vacant succession and the property of minors and absent heirs".
In the case at bar, the plaintiff admits that the indictment against him charging him with having stolen the cow as belonging to Ignace Pitre was dismissed as the result of the nolle prosequi. He was therefore discharged without a day. He was not acquitted nor was the title to the cow adjudicated. However, the proceedings in the criminal side of the District Court was terminated. This suit is a controversy over the right to the cow, and plaintiff seeks the restitution thereof.
The summary process cannot be extended beyond the cases expressly authorized by law. We have been referred to no authority, and we know of none, which permits an action which seeks the restitution of property by summary process. We have not any doubt that if the criminal charges were still pending, or in fact any civil action, that summary process for the delivery of property, as incidental to the proceedings, could be resorted to, such as was done in the case of Raines v. Dunson, 145 La. 1011, 83 So. 224; but such is not the case here. The fact that summary process may have been used, as in the case of Byrnes v. Richardson, supra, is not authority that it is in conformity with our Code of Practice. In the Byrnes case, the court specifically stated that no objection had been made as to the procedure. See 8 La.App. 633. In the case of Succession of Gary, 120 La. 1028, 46 So. 12, it was held that there is no right to maintain a proceeding by rule in which the plaintiff alleges that the defendant is wrongfully in possession of the former's property and prays that he be ordered to show cause why a writ of possession should not issue. The right to initiate an original proceeding by a rule to show cause, as is attempted in this case, must be derived from express statutory authority. See Fishel v. Mercier, 32 La.Ann. 704, 708. The right to summary process implies the pendency of a suit between the parties and is confined to incidental matters arising during the contestation, except, in certain cases, where a summary proceeding is expressly allowed by law. Code of Practice, Articles 754, 755.
It is our opinion that this suit should have been instituted by petition and citation as an ordinary action and not as a summary proceeding. Our conclusion is that the exception should have been maintained.
For the reasons assigned the judgment appealed from is amended by maintaining the exception addressed to the form of procedure and dismissing the suit at the cost of plaintiff in rule and as thus amended the judgment is affirmed.